OPINION
{¶ 1} Appellant Teresa Lisbon ("mother") appeals the August 8, 2003 Judgment Entry of the Stark County Court of Common Pleas, Juvenile Division, which terminated mother's parental rights, privileges and obligations with respect to her minor child, and granted permanent custody of the child to appellee Stark County Department of Job and Family Services ("the Department").
 STATEMENT OF THE CASE AND FACTS {¶ 2} On May 17, 2002, the Department filed a complaint, alleging I'nya Lisbon (DOB 5/19/00) was a dependent child, and seeking temporary custody of I'nya. At an emergency shelter care hearing on the same day, the trial court granted temporary custody of I'nya to the Department.
 {¶ 3} The magistrate conducted an evidentiary hearing on August 9, 2002. Based upon the testimony of the putative father, Thomas Allison,[1]
and the stipulation of mother, the trial court found I'nya to be a dependent child and ordered she remain in the temporary custody of the Department. The magistrate conducted a dispositional review hearing on November 14, 2002. The magistrate found mother, who was pregnant again, lacked parenting skills and failed to avail herself of the offered programs. Additionally, mother lacked employment and housing. A case plan was approved and adopted at that hearing.
 {¶ 4} On April 8, 2002, the Department filed a Motion for Permanent Custody, asserting the child was abandoned, and could not and should not be placed with either parent within a reasonable time. The Department based the motion on mother's failure to work on the case plan. Specifically, mother never completed the required Quest evaluation. Although mother did complete a psychological evaluation, she did not follow through with the recommendations she attend on-going counseling and receive a consultation for medication. Mother also did not complete Goodwill parenting classes, and had not established stable housing. Furthermore, at the time of the filing of the motion, mother was being held in Florida on charges of possession of cocaine, trafficking and importation of cocaine. Mother was arrested after she was found in possession of 1.28 pounds of cocaine as she attempted to reenter the country from Jamaica.
 {¶ 5} Counsel for mother filed a Motion to Transport on April 14, 2003, requesting the trial court issue an order to transport mother from the Miami-Dade Detention Center to the Stark County Court of Common Pleas for appearance at the May 12, 2003 permanent custody hearing. The trial court denied counsel's request. On April 23, 2003, counsel for mother filed a Motion for Alternate Method of Testimony, requesting the trial court secure mother's testimony by deposition and/or other alternate methods. Via Order filed April 29, 2003, the trial court permitted mother's testimony to be secured through deposition and/or any alternate method available to the parties. The trial court ordered the arrangements for such testimony to be made by both parties, with resolution on or before the permanent custody hearing scheduled for May 12, 2003. On May 13, 2003, the trial court continued the permanent custody until July 8, 2003, as mother's deposition had not yet been obtained.
 {¶ 6} Prior to the commencement of the permanent custody hearing on July 8, 2003, counsel for mother requested a continuance based upon the fact mother's deposition had not yet been obtained as well as the fact counsel had not yet seen the psychological evaluation of grandmother, Tina Gohlston. The trial court denied counsel's request and proceeded with the hearing, but the trial court stated the record could be supplemented with appellant's deposition prior to rendering its decision. No supplemental deposition was filed. Via Judgment Entry filed August 8, 2003, the trial court terminated mother's parental rights, privileges and obligations, and granted permanent custody of I'nya to the Department. The trial court also filed its Findings of Fact and Conclusions of Law on August 8, 2003.
 {¶ 7} It is from this judgment entry mother appeals, raising the following assignments of error:
 {¶ 8} "I. The Trial Court erred to the prejudice of the appellant, Theresa Lisbon in violation of the due process clause of the Fifth andFourteenth Amendments to the United States constitution and Article One Section Sixteen of the Ohio Constitution when it overruled her motion for an order transferring her from the Miami-Dade Detention Center, where she was being held awaiting trial, to attend the permanent custody hearing concerning her daughter, without providing an alternative method in which she could be heard.
 {¶ 9} "II. The Trial Court abused its discretion and/or erred as a matter of law when it failed to grant custody of the minor child to her maternal grandmother.
 {¶ 10} "III. The judgment of the trial court that the minor child cannot or should not be placed with appellant within a reasonable time was against the manifest weight and sufficiency of the evidence.
 {¶ 11} "IV. The judgment of the Trial Court that the best interests of the minor child would be served by the granting of permanent custody was against the manifest weight and sufficiency of the evidence."
 {¶ 12} This case comes to us on the accelerated calendar. App. R. 11.1, which governs accelerated calender cases, provides, in pertinent part:
 {¶ 13} "(E) Determination and judgment on appeal.
 {¶ 14} "The appeal will be determined as provided by App. R. 11.1. It shall be sufficient compliance with App. R. 12(A) for the statement of the reason for the court's decision as to each error to be in brief and conclusionary form.
 {¶ 15} "The decision may be by judgment entry in which case it will not be published in any form."
 {¶ 16} This appeal shall be considered in accordance with the aforementioned rule.
 I {¶ 17} In her first assignment of error, mother maintains the trial court violated her due process rights when it overruled her motion for an order transferring her from the Miami-Dade Detention Center for the purpose of the hearing on the motion for permanent custody, and failed to provide her with an alternative method in which she could be heard.
 {¶ 18} When the state initiates a permanent custody proceeding, parents must be afforded the fundamentally fair procedures in accordance with the Fourteenth Amendment Due Process Clause and Section 16, ArticleI, Ohio Constitution. In re Elliot (June 25, 1993), Lawrence App. No. 92 CA 34, unreported. Natural parents have a constitutionally protected right to be present at a permanent custody hearing. In re Vandale (June 29, 1993), Washington App. No. 92CA31, unreported. Although those same constitutionally protected rights extend to an incarcerated parent, those rights may not be absolute. Id. The standard to use to determine if an incarcerated parent should be present at a permanent custody hearing should be based on "the best interest of the child or children involved. It is almost always in the best interest of the child to have the parent attend and testify in person in a permanent custody hearing. In making a well[-]reasoned and informed decision, a trial court is best served by having available as much information as possible. All things being equal, the testimony from a parent would provide more information than not having the parent." In the Matter of Vandale (Aug. 12, 1992), Washington App. No., unreported.
 {¶ 19} Courts have used the balancing test established in Mathewsv. Eldridge (1976), 424 U.S. 319, 335, to determine parental due process rights in custody termination proceeding. See, e.g., In re: Harding
(Jan. 25, 1995), Summit App. N o. 16552, unreported. The three factors considered in a Mathews analysis are (1) the private interest affected, (2) the risk of erroneous deprivation and the probable value of additional safeguards, and (3) the governmental burden of additional procedural requirements. Mathews at 335.
 {¶ 20} In analyzing these three factors, the Department concedes the private interest affected by the termination of parental rights is "a basis and essential right." Appellee's Brief at 4. We can only speculate as to the burden the government would bear to secure mother's deposition. Neither party has provided any references to projected costs, ensuing time delay, or administrative difficulties which would be encountered in order to secure mother's deposition.
 {¶ 21} As to the "risk" factor, mother contends her counsel could not have prepared properly without mother's testimony and counsel's cross-examination of the case worker would be hindered. Mother argues "the value of the testimony from Ms. Lisbon would have been great. It would have provided clarity on her situation in Miami, and would have given her an opportunity to describe any services she may have participated in during her incarceration towards completing her case." Appellant's Brief at 4.
 {¶ 22} We find mother's argument as to the value of mother's testimony speculative. In light of the evidence as discussed, infra, in Assignment of Error II, III and IV, we conclude the risk of erroneous deprivation and the probable value of additional safeguards were minimal.
 {¶ 23} Although the trial court denied mother's request to be transported from Florida to Ohio for the permanent custody hearing, the trial court recognized the importance of the rights at stake, and continued the hearing to allow time for mother to be deposed. Despite reasonable efforts on the part of mother's counsel and counsel for the Department, Miami-Dade prison officials would not allow for the deposition to be conducted. The trial court proceeded without mother having the opportunity to be heard, but specifically provided mother the opportunity to supplement the record with her deposition prior to announcement of its decision. Mother failed to do so. Under these circumstances, we find no violation of mother's due process rights occurred.
 {¶ 24} Mother's first assignment of error is overruled.
 II {¶ 25} In her second assignment of error, mother maintains the trial court abused its discretion and/or erred in failing to grant custody of the minor child to her maternal grandmother. We disagree.
 {¶ 26} R.C. 2151.412 states, in relevant part:
 {¶ 27} "In the agency's development of a case plan and the court's review of the case plan, the agency and the court shall be guided by the following general priorities: * * * (2) If both parents of the child have abandoned the child, have relinquished custody of the child, have become incapable of supporting or caring for the child even with reasonable assistance, or have a detrimental effect on the health, safety, and best interest of the child, the child should be placed in the legal custody of a suitable member of the child's extended family; * * * (5) If the child cannot be placed with either of his parents within a reasonable period of time or should not be placed with either, if no suitable member of the child's extended family or suitable nonrelative is available to accept legal custody of the child, and if the agency has a reasonable expectation of placing the child for adoption, the child should be committed to the permanent custody of the public children services agency or private child placing agency."
 {¶ 28} The language of R.C. 2151.412(G) is precatory rather than mandatory. In Re: Hiatt (1983), 86 Ohio App.3d 716; In Re: Dixon (Nov. 29, 1991), Lucas App. No. L-91-021, unreported; In Re: Cundiff (Nov. 20, 1995), Stark App. No. 1995 CA 00102, unreported. Consequently, this statute does not require the trial court to act in a specific manner, but rather suggests criteria to be considered in making its decision regarding case plan goals. Dixon, supra.
 {¶ 29} The evidence presented at the permanent custody hearing established the Department had considered Tina Gohlston, the maternal grandmother of I'nya, for placement of the child and would continue to consider Gohlston as an adoptive home, but there were significant issues to be addressed. The Department requested Gohlston to submit to a psychological evaluation due to concerns over her mental health. Dr. Gerald Bello, who conducted the psychological evaluation, testified Gohlston was not appropriate for custody or placement of I'nya at the present time due to her mental health concerns. Dr. Bello recommended grandmother receive psychiatric/psychotherapy treatment. Dr. Bello testified the test results identified grandmother with "psycho agitation," which he described as "being wired," with angry outbursts and impulsivity.
 {¶ 30} Grandmother testified on her own behalf. She stated she cared for I'nya most of I'nya's first year of life. When I'nya was about nine or ten months old, grandmother insisted mother find work, attend school, and get her life her in order so she could parent I'nya. Thereafter, mother took the child and moved to Wisconsin. Grandmother had no contact with I'nya for about six or seven months. Grandmother further testified she had mother placed in foster care shortly before mother's eleventh birthday. Mother remained in foster care until she was fifteen. Grandmother explained she had mother placed because her behavior was "outrageous" and "bizarre," and she was unable to handle mother's behavior. On cross-examination, grandmother stated she "really would not want to adopt [I'nya] * * * but if that's what I need to do, yes I will." Tr. at 73. She explained she would like mother to get an opportunity to straighten herself out.
 {¶ 31} Based upon grandmother's significant mental health issues, we find the trial court did not abuse its discretion in failing to grant custody of the child to grandmother.
 {¶ 32} Mother's second assignment of error is overruled.
 III, IV {¶ 33} Because mother's third and fourth assignments of error are interrelated, we shall address said assignments of error together. In her third assignment of error, mother argues the trial court's finding I'nya could not or should not be placed with mother within a reasonable time is against the manifest weight of the evidence. In her fourth assignment of error, mother submits the trial court's finding the best interest of the child would be served by granting permanent custody to the Department is against the manifest weight of the evidence.
 {¶ 34} We are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.
 {¶ 35} R.C. 2151.414(E)states: "In determining at a hearing held pursuant to division (A) of this section . . . whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with the parent: (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties; (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * * (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child; * * * 12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing; * * * (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect * * * (16) Any other factor the court considers relevant."
 {¶ 36} The trial court approved and adopted a case plan, which reflected the objectives necessary for the reunification of the family. Mother was required to complete a psychological evaluation and follow all recommendations; attend Goodwill parenting classes; obtain substance abuse treatment, including urinalyses; obtain job training or employment; establish and maintain appropriate housing for the child; and assist in establishing paternity.
 {¶ 37} Danielle Smith, an ongoing social service worker for the Department who was assigned to the case, testified mother did complete her psychological evaluation, which recommended ongoing psychotherapy and an evaluation for medication. Smith noted mother did not follow either of the recommendations. Mother did not attend any substance abuse treatment or intakes for treatment. To this end, mother was given funds for transportation, offered rides to appointments, and was contacted by the service providers themselves in an attempt to reach her and engage her in services. Mother failed to drop any urine samples during the pendency of the case. Mother never signed up for Goodwill classes, she was only briefly employed. Despite being provided with housing alternatives, mother never took advantage of or followed through with the opportunities.
 {¶ 38} Smith testified her last contact with mother was at a visit with I'nya on November 19, 2002. Mother was arrested approximately ten days later when she attempted to reenter the country with a substance, alleged to be cocaine, on her person. Mother was placed into custody and remains in the Miami-Dade Detention Center. Mother has not had contact with the Department or I'nya since the November 19, 2002 visit. While incarcerated, mother gave birth to another child, who is in the custody of Florida Children's Services.
 {¶ 39} On cross-examination, Smith testified, prior to mother's arrest and detention, her contact with the Department and I'nya was sporadic. Although mother was given a bus pass to ensure her presence at all visits, mother did not want to take the bus. At one point, mother did not have any contact with the Department or I'nya for a period of four weeks, when contact was established, mother stated she did not visit because she was trying to get herself together.
 {¶ 40} Dr. Gerald Bello conducted an evaluation of mother. Dr. Bello testified mother evidenced a lot of exaggeration and symptomology indicative of "either some sort of turmoil which cannot be sorted out or a plea for help, like everything is wrong." Tr. at 20. Dr. Bello explained the type of exaggerations exhibited by mother raise questions regarding her "coping mechanisms and ability to hold it together." Tr. at 21. A personality profile was conducted, which showed mother suffered from depression and had the personality to allow herself to be exploited and possibly abused. Dr. Bello recommended mother undergo a year of psychotherapy and a psychiatric consult to help stabilize the turmoil.
 {¶ 41} Based upon the foregoing, we find the trial court did not error in finding the child could not or should not be placed with mother within a reasonable period of time.
 {¶ 42} Regarding "best interest," the relevant statute is R.C.2151.414, which provides, in pertinent part: "(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply: (a) The child is not abandoned or orphaned * * *, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents."
 {¶ 43} In determining the best interest of a child, R.C. 2151.414(D) states: "* * * the court shall consider all relevant factors, including, but not limited to, the following: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child * * *; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."
 {¶ 44} Mother maintains a change of legal custody to grandmother would have met the concerns raised by the professionals regarding I'nya's best interest. Based upon our disposition in assignment of error two, supra, we find the trial court's finding it was in I'nya's best interest to grant permanent custody to the Department was not against the manifest weight of the evidence.
 {¶ 45} Mother's third and fourth assignments of error are overruled.
 {¶ 46} The judgment of the Stark County Court of Common Pleas, Juvenile Division, is affirmed.
Wise, J. concur.
Edwards, J. concurs separately.
[1] Thomas Allison is not a party to this appeal.