OPINION *Page 2 
{¶ 1} Father-appellant, Brandon Haller (hereinafter "Brandon"), appeals the Wyandot County Court of Common Pleas judgment granting permanent custody of his son, Kayden Haller (D.O.B. 06-06-05) (hereinafter "Kayden"), to the Wyandot County Department of Job and Family Services (hereinafter "WCDJFS"). For the reasons that follow, we affirm.
 {¶ 2} On March 30, 2006, WCDJFS filed a complaint pursuant to R.C. 2151.04(C) alleging that Kayden was a dependent child because his condition and environment warranted the State to assume guardianship. (Doc. No. 1). The complaint alleged that Kayden's mother, Cindy Patterson (hereinafter "Cindy"), who was under WCDJFS' protective supervision herself, was unable to adequately provide for Kayden. (Doc. No. 1, Attached Statement of Facts). The complaint further indicated that Brandon was unable to care for Kayden because he was incarcerated. (Doc. No. 1). WCDJFS attached to the complaint an affidavit in support of an ex parte order to place Kayden in its temporary care and custody. (Id.). The trial court sua sponte appointed a guardian ad litem ("GAL") for Kayden, sent notice of hearings, and summoned both Cindy and Brandon. (Doc. Nos. 4-7).
 {¶ 3} On March 31, 2006, the trial court issued an ex parte order awarding WCDJFS temporary custody of Kayden. (Doc. No. 8). Also on March 31st, the State filed a precipe with the clerk requesting that Brandon be served with a copy *Page 3 
of the complaint and notice of initial appearance, adjudication, and disposition at his supposed place of incarceration. (Doc. No. 13). The clerk issued the order to serve Brandon that same day. (Doc. No. 14).
 {¶ 4} On April 6, 2006, a notice of failure of service ("refused") on Brandon was filed. (Doc. No. 18). On April 13, 2006, the State filed a second precipe with the clerk requesting that Brandon be served with the same documents, this time providing a different place of incarceration. (Doc. No. 20). A return receipt was filed with the trial court on April 18, 2006. (Id., Attached).
 {¶ 5} On May 22, 2006, adjudication was held with both Cindy and Brandon present. (June 22, 2006 JE, Doc. No. 32). Cindy and Brandon entered pleas of admission to the dependency complaint, and the trial court found Kayden to be dependent. (Id.). The parties waived bifurcation, and the matter immediately proceeded to disposition. (Id.). The trial court ordered that Kayden continue to be placed in foster care with Cindy and remain in WCDJFS' temporary custody. (Id.). The trial court also ordered that Brandon follow the case plan goals, including that he be evaluated for drug and alcohol abuse, anger management, and complete a parenting program. (Doc. No. 32).
 {¶ 6} Thereafter, the matter proceeded with various amended case plans. Ultimately, however, WCDJFS filed a motion for permanent custody pursuant to R.C. 2151.413 on March 5, 2008. (Doc. No. 62). The motion alleged that Cindy failed to meet case plan objectives and that Brandon was incarcerated and unable *Page 4 
to provide for Kayden. (Id., Attached Statement of Facts). That same day, the State filed a precipe with the clerk seeking personal service of the motion, notice of hearing, and notice of rights upon Cindy and Brandon. (Doc. No. 63). A return receipt for Brandon was filed with the trial court on March 13, 2008. (Id., Attached).
 {¶ 7} On April 21, 2008, a hearing on the motion was held, but Brandon was not present at the hearing but was only represented by counsel. (Apr. 21, 2008 Tr. at 4). The court heard testimony from several of the department's witnesses; however, the court could not complete the hearing that day due to time constraints and continued the matter for further hearing on June 9, 2008. (Doc. No. 81).
 {¶ 8} On June 9, 2008, the motion hearing recommenced, again without Brandon present but with his attorney present. (June 9, 2008 Tr. at 3); (July 3, 2008 JE, Doc. No. 86). At this hearing, Cindy consented to the motion for permanent custody and surrendered her parental rights. (Id. at 4-5); (July 3, 2008 JE, Doc. No. 86). The trial court, thereafter, found that it was in Kayden's best interest that WCDJFS' motion for permanent custody be granted as to Cindy. (Id. at 11); (July 3, 2008 JE, Doc. No. 86). However, with respect to Brandon, the trial court provided him two weeks to decide whether he wanted a further hearing or was willing to consent to the motion. (Id. at 12-13); (July 3, 2008 JE, Doc. No. 86). *Page 5 
 {¶ 9} On July 31, 2008, again the motion hearing recommenced, this time with Brandon and his counsel present. (July 31, 2008 Tr. at 4); (Aug. 11, 2008 JE, Doc. No. 90). On August 11, 2008, the trial court granted WCDJFS' motion for permanent custody and terminated Brandon's parental rights. (Doc. No. 90).
 {¶ 10} On August 20, 2008, Brandon filed his notice of appeal. Brandon now appeals the trial court's grant of permanent custody and termination of his parental rights asserting three assignments of error.
 ASSIGNMENT OF ERROR NO. I THAT THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN THAT THE DECISION OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BY VIRTUE OF THE FACT THAT THE TRIAL COURT DID NOT SPECIFICALLY AND ADEQUATELY CONSIDER ALL THE RELEVANT FACTORS REQUIRED BY THE OHIO REVISED CODE AS A PREDICATE TO THE GRANTING OF A MOTION FOR PERMANENT CUSTODY.
 {¶ 11} In his first assignment of error, Brandon argues that the trial court failed to specifically address and adequately consider each of the R.C. 2151.414(D) factors in making its "best interests" determination. As such, Brandon argues that the trial court's decision "was in error as a matter of law." (Appellant's Brief at 9).
 {¶ 12} The State, on the other hand, argues that the trial court provided "some affirmative indication" that it had considered the R.C. 2151.414(D) factors because the trial court specifically stated it had in its judgment entry. The State argues that our precedent establishes that this is sufficient to comply with the *Page 6 
statute. Furthermore, the State argues that it is clear that the trial court considered these factors, though it did not specifically identify them, when the judgment entry is reviewed and compared with the factors. We find that the trial court's judgment complied with R.C. 2151.414(D) and was not contrary to law.
 {¶ 13} Pursuant to R.C. 2151.413, an agency that has been granted temporary custody of a child that has not been abandoned or orphaned may seek permanent custody of that child. R.C. 2151.414(B) permits permanent custody to be granted if the agency has shown by clear and convincing evidence that such action is in the "best interests of the child," and that any of the factors in division (B)(1) apply. In re Jackson, 3d Dist. No. 5-03-25, 2004-Ohio-542, ¶ 6. The trial court here found that Kayden was in WCDJFS' temporary custody for twelve or more months of a consecutive twenty-two month period under R.C. 2151.414(B)(1)(d). Brandon does not dispute this finding.
 {¶ 14} Brandon argues that the trial court erred by failing to adequately consider the R.C. 2151.414(D) "best interests" factors. We disagree. To determine whether granting permanent custody to the agency is in the `best interests of the child,' R.C. 2151.414(D) provides a non-exclusive list of factors for the trial court to consider:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; *Page 7 
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
As this Court has stated before, "[i]n rendering its judgment, the trial court must either specifically address each of the required considerations set forth in R.C. 2151.414(D) in its judgment entry,or otherwise provide some affirmative indication in the record that the court has considered the specific factors listed in R.C. 2151.414(D)."In re Robinson, 3d Dist. No. 1-08-24, 2008-Ohio-5311, ¶ 30, citingIn re McMillin, 171 Ohio App.3d 686, 2007-Ohio-2046, 872 N.E.2d 975, ¶ 12 (emphasis in original).
 {¶ 15} The trial court here specifically stated in its judgment entry that it "* * * considered the factors set forth in Section 2151.414 of the Ohio Revised Code * * *." (Aug. 11, 2008 JE, Doc. No. 90). Furthermore, although the trial court did not specifically reference its findings of fact to the applicable R.C. 2151.414(D) factors, its findings of fact provide "some affirmative indication" that it properly considered them. *Page 8 
 {¶ 16} With regard to R.C. 2151.414(D)(1) as it applied to Brandon, the trial court found that:
 The Department presented the testimony of Ms. McGee, who advised the Court of the relationship between Kayden and his father, the father's non-compliance with the Case Plan goals, his criminal record and his present incarceration. Ms. McGee further advised there was no other appropriate family member, with whom the child could be placed.
 * * * the C.A.S.A. G.A.L. for said child * * * advised that Kayden is doing well in his current foster placement.
 * * * father was incarcerated initially and, even though the Department took the child once per month to visit with him, this was not sufficient time to form a bond with such a young child; and when father was released from prison, he missed so many visits that he was removed from the Case Plan. Specifically, the Court notes that father missed three months of visitation, which is a significant amount of time.
 * * * when the father was in a position to work on his relationship with his son, he failed to do so.
 * * * Kayden is doing well in his current placement. In his three year old mind he has parents and siblings. * * * Kayden's relatives are strangers to him and the Court finds there is no suitable relative placement.
 * * * out of this 3-year-old's life, [paternal grandmother] has had approximately 11 visits, which is not enough time to establish of [sic] any type of relationship.
(Aug. 11, 2008 JE, Doc. No. 90). During the final motion hearing, the trial court found that Kayden had bonded with his foster family. (July 31, 2008 Tr. at 77).
 {¶ 17} With regard to R.C. 2151.414(D)(2), the trial court did not specifically address Kayden's expressed wishes, but noted that the GAL *Page 9 
recommended that WCDJFS be given permanent custody. (Id.). The fact that the trial court did not focus on Kayden's express wishes, however, is not surprising given that Kayden was only three years old at the time of the July 31, 2008 hearing. R.C. 2151.414(D)(2) expressly provides that a court give "due regard for the maturity of the child" when considering this factor. When a child is of tender years, a trial court's (D)(2) finding is often garnered from the GAL's report and recommendation. This is especially true in cases such as these where the child's social, emotional, and language skills were tested and found to be low, but average. See, e.g., In re Lopez, 166 Ohio App.3d 688, 2006-Ohio-2251,852 N.E.2d 1266, ¶ 38. Kayden's young age and delayed development was known by the court. For example, the court noted that, "Kayden is doing well in his current placement, in his young three-year-old mind, has a family, has parents, has siblings, is doing well, is a sensitivechild" (July 31, 2008 Tr. at 78) (emphasis added). In addition, the trial court was able to view several reports filed by the social worker and the GAL, which indicated that Kayden had developmental and speech problems. (See Statement of Facts dated 9-12-07 GAL Report dated 4-18-08).
 {¶ 18} Although the GAL reported that Kayden would ask for his mommy, which could have indicated that Kayden desired to be with Cindy, the GAL ultimately recommended that WCDJFS be granted permanent custody. (June 9, 2008 Tr. at 9); (GAL Report dated 4-18-08). Additionally, during the July 31st *Page 10 
hearing, the GAL testified that she was still of the opinion that WCDJFS should be granted permanent custody. (July 31, 2008 Tr. at 36). The trial court also had evidence before it that Kayden was very comfortable in his foster home placement. The GAL testified:
 Q: Have you seen Kayden with his foster parents?
 A: Yes.
 Q: How does he react to them?
 A: Delightfully. I saw him this week. * * * And he's very, very comfortable in his surroundings. He has other people, other little people, in the home that he considers his family. He calls the foster mother Mom. He is a very loving, caring, hugging, lovable child. Very, very comfortable in his current surroundings.
 Q: Now I'm looking for the buzz word. Has he bonded with
 anyone?
 A: He's bonded extremely well with everybody within the household, that I have seen. And I've seen everyone that lives in the household.
(Id. at 37).
 {¶ 19} As a further matter, we note that Kayden was represented by counsel throughout the permanent custody proceedings. When Cindy consented to the permanent custody motion at the June 9, 2008 hearing, Kayden's attorney advised the trial court on the matter as follows:
 * * * this is a difficult decision, because Kayden does care for his mother. You know, when I talked with him, he knew who she is and does care for her. But at the same time, again, this is a good decision, we believe, and Kayden is a boy who does need caring in a secure and stable home, and this can help provide that for him. And that's what he needs during these formative years. So I just want to put that on the record, he is doing well in his placement currently and this will continue to allow him to grow into hopefully a fine young man. *Page 11 
(June 9, 2008 Tr. at 10-11). Accordingly, counsel's statement provides a further affirmative indication in the record that the trial court considered Kayden's wishes, as expressed through counsel, with due respect for his maturity.
 {¶ 20} Based on the record in this case, we are not persuaded that the trial court failed to analyze R.C. 2151.414(D)(2) as Brandon argues. Aside from that, we are persuaded that any error by the GAL's failure to inquire into Kayden's wishes was harmless given the record before the trial court. In re Lane, 3d Dist. Nos. 9-03-61, 9-03-62, 2004-Ohio-2798, ¶¶ 45-46.
 {¶ 21} With regard to R.C. 2151.414(D)(3), the trial court found that "Kayden has been in the temporary custody of the Department for twelve or more months of a consecutive twenty-two month period[.]" (Aug. 11, 2008 JE, Doc. No. 90); (July 31, 2008 Tr. at 78). Therefore, the trial court properly considered R.C. 2151.414(D)(3).
 {¶ 22} With regard to R.C. 2151.414(D)(4), the trial court noted, in addition to the relevant findings made with respect to (D)(1) above:
 * * * father was convicted on two more felonies and sent back to prison; and he is not due to be released until February 2009. Therefore, father is in no position to provide nurturing, stability, guidance or support to this young child at this time; and when father was in a position to work on his relationship with his son, he failed to do so.
 [Kayden] is in a stable home and it would not be in his best interest to uproot him from all he knows of his world right now and take him away from the only people who have provided stability, care and nurturing to him. *Page 12 
(Aug. 11, 2008 JE, Doc. No. 90); (See also, July 31, 2008 Tr. at 78). Therefore, the trial court properly considered R.C. 2151.414(D)(4).
 {¶ 23} With respect to R.C. 2151.414(D)(5), the court found, "* * * that father has had another child removed from his care and custody by job and family services." (Aug. 11, 2008 JE, Doc. No. 90); (July 31, 2008 Tr. at 80). R.C. 2151.414(E)(11) provides, as a factor under subsection (D)(5), whether "[t]he parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code * * *." As such, the trial court properly considered R.C. 2151.414(D)(5).
 {¶ 24} Accordingly, based upon our review of the record, it is clear that the trial court considered the R.C. 2151.414(D) factors as required. Therefore, Brandon's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II THAT THE CONSTITUTIONAL RIGHTS OF THE APPELLANT WERE VIOLATED BY THE FACT THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
 {¶ 25} In his second assignment of error, Brandon argues that his constitutional right to counsel was violated because trial counsel failed to secure his presence at the permanent custody hearings. The State, however, argues that Brandon does not have an absolute right to attend the permanent custody hearing since he was incarcerated. Further, the State argues that Brandon cannot overcome the presumption that counsel's decision not to secure his presence was a *Page 13 
trial strategy. The State also argues that Brandon cannot show prejudice since he admitted that he was not capable of caring for Kayden. We agree with the State.
 {¶ 26} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. State v. Kole (2001), 92 Ohio St.3d 303, 306,750 N.E.2d 148, citing Strickland v. Washington (1984), 466 U.S. 668,687, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. Strickland, 466 U.S. at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675, 693 N.E.2d 267. Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. State v. Carter (1995), 72 Ohio St.3d 545, 558,651 N.E.2d 965. Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. State v.Bradley (1989), 42 Ohio St.3d 136, 141-42, 538 N.E.2d 373, quotingState v. Lytle (1976), 48 Ohio St.2d 391, 396, 358 N.E.2d 623. Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Bradley, 42 Ohio St.3d at 142, citing *Page 14 Strickland, 466 U.S. at 691. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Bradley,42 Ohio St.3d at 142; Strickland, 466 U.S. at 694.
 {¶ 27} Brandon has failed to demonstrate ineffective assistance of counsel. To begin with, an incarcerated parent does not have an absolute right to attend a permanent custody hearing. State ex rel. Vanderlaan v.Pollex (1994), 96 Ohio App.3d 235, 236, 644 N.E.2d 1073; In reJackson (Aug. 13, 1999), 2nd Dist. No. 17514, at *8; In re G.C. M.C., 8th Dist. No. 83994, 2004-Ohio-5607, ¶ 55; In re Gray (Dec. 22, 1999), 9th Dist. Nos. 99CA0015, 99CA0014, at *3. See, also, In reLisbon, 5th Dist. No. 2003CA00318, 2004-Ohio-126, ¶ 18; In re Sears
(Jan. 31, 2002), 10th Dist. No. 01AP-715, at *4, citing In reVandale (June 30, 1993), 4th Dist. No. 92 CA 31; In re Maciulewicz, 11th Dist. No. 2002-A-0046, 2002-Ohio-4820, ¶ 14. Additionally, Brandon was represented by counsel during all three permanent custody hearings. Brandon's counsel zealously represented him at the hearings, both objecting to questions and cross-examining witnesses on Brandon's behalf. (Apr. 21, 2008 Tr. at 64, 80, 98, 119). During the first hearing, Brandon's counsel argued that the permanent custody motion should be denied and that Kayden should remain with his mother. (Id. at 8-9). At the second hearing, Cindy consented to the motion for permanent custody and voluntarily terminated her parental rights. (June 9, 2008 Tr. at 11-12). During this hearing, the court stated to Brandon's counsel, "Mr. Johnson, I will get to you afterwards. I know you have *Page 15 
some things to present, or some things to do in regard to Dad." (Id. at 10). Thereafter, the following discussion occurred:
 THE COURT: The father, who is in prison, according to the testimony, will have two weeks, Mr. Johnson, to figure out what he's doing in regards to this, the motion for permanent custody. I would expect at the end of the two weeks to hear from you that you are going to attempt to pursue something, you want a hearing, whatever, or that he is willing to likewise follow suit.
 Do you understand ?
 MR. JOHNSON: Yes, Your Honor.
 THE COURT: And you will share that with everyone else involved.
 MR. JOHNSON: Of course.
(Id. at 12-13). In its judgment entry terminating Cindy's parental rights, the court noted:
 The Court ordered that Attorney Johnson contact the father, Brandon Haller, and advise him that he has two weeks to decide what he needs to do — either consent to the Department's motion or request a further hearing; and that Attorney Johnson shall advise the Court and all parties of Mr. Haller's decision.
(July 3, 2008 JE, Doc. No. 86).
 {¶ 28} On July 31, 2008, the trial court held a third hearing on the permanent custody motion, this time with Brandon present. (July 31, 2008 Tr. at 4). At the beginning of the hearing, Attorney Johnson stated that, because of Cindy's voluntary surrender of her parental rights, he thought it would be best if Brandon was present for this hearing. (Id. at 5). At the hearing, Attorney Johnson did not advocate that Brandon was capable of taking care of Kayden; but rather, that Kayden should be placed with his paternal grandmother, Ms. Delapaz. (Id. at *Page 16 
73-76). Ultimately, however, the court disagreed and terminated Brandon's parental rights. (Id. at 80).
 {¶ 29} Based on our review of the record, we are not persuaded that Brandon was denied effective assistance of counsel. Attorney Johnson advocated on Brandon's behalf at all three permanent custody hearings. Brandon did not testify during any of those hearings, including the third. Attorney Johnson reasonably advocated during the first hearing that Cindy should be given custody of Kayden, and, when that position was no longer viable, Johnson requested a third hearing at which he argued that the department failed to make reasonable efforts toward a relative placement. Given that Brandon was then incarcerated, this was most likely counsel's strongest argument. Accordingly, Brandon has failed to show that counsel's performance was deficient or unreasonable under the circumstances.
 {¶ 30} Furthermore, Brandon has failed to establish prejudice by virtue of the fact that he was not present at the first two hearings. At the first hearing, Brandon's strategy was to support Cindy as custodian. The second hearing recorded Cindy's consent to the motion and voluntary surrender of parental rights. During the third hearing, at which Brandon was present, the evidence focused on both his and Ms. Delapaz's ability to care for Kayden. Brandon has failed to allege what, if any, evidence he may have offered at the first two hearings that would have changed the outcome of the proceedings. Furthermore, we are not *Page 17 
persuaded that Brandon's presence at the hearings would have changed the outcome, especially in light of the fact that Cindy consented to the motion.
 {¶ 31} For all these reasons, we find that Brandon has failed to establish ineffective assistance of counsel and overrule his second assignment of error.
 ASSIGNMENT OF ERROR NO. III THAT THE DECISION OF THE TRIAL COURT TO GRANT PERMANENT CUSTODY WAS ERRONEOUS AS A MATTER OF LAW DUE TO THE FAILURE OF THE DEPARTMENT OF JOB AND FAMILY SERVICES TO GIVE ADEQUATE CONSIDERATION TO RELATIVE PLACEMENT AS AN ALTERNATIVE TO PERMANENT CUSTODY.
 {¶ 32} Brandon next argues, in his third assignment of error, that WCDJFS is obligated to investigate a relative placement, but failed to do so. Specifically, Brandon argues that WCDJFS requested that the Marion County Department of Job and Family Services (MCDJFS) perform a home study of the paternal grandmother, Ms. Delapaz, but MCDJFS declined, indicating that they would not place Kayden with Ms. Delapaz. Brandon argues that since the agency failed to conduct the home study, it failed to adequately investigate the relative placement; and therefore, the trial court's grant of permanent custody must be reversed.
 {¶ 33} The State, however, argues that MCDJFS declined to conduct the home study and declined to place Kayden with Ms. Delapaz because, as the trial court found, she had prior involvement with MCDJFS. The State also argues that the trial court did not abuse its discretion by declining to place Kayden with Ms. *Page 18 
Delapaz when the evidence demonstrated that she: admitted that her son had a juvenile and adult record; is living in State-assisted housing; is receiving food stamps and Medicaid; is living with her two daughters (ages 17 and 20) and her grand-daughter; has had two previous abusive marriages; has major health problems; and since 2001, has had repeated contact with the Marion Police Department. We agree with the State.
 {¶ 34} "[I]n Ohio, `relatives seeking legal custody of a child are not afforded the same presumptive rights that a parent receives as a matter of law.'" In re D.S., 10th Dist. Nos. 07AP-479, 07AP-485,2007-Ohio-6781, ¶ 15, quoting In re A. V., 10th Dist. No. 05AP-789,2006-Ohio-3149, ¶ 40. "[A] juvenile court need not find, by clear and convincing evidence, that a relative is an unsuitable placement option prior to granting the permanent custody request." In re B.D., 4th Dist. No. 08CA3016, 2008-Ohio-6273, ¶ 29. In fact, "the juvenile court is not required to consider placement with a relative prior to granting permanent custody." In re M.R.D., 10th Dist. No. 05AP-324,2005-Ohio-5705, ¶ 35, quoting In re Andy-Jones, 10th Dist. Nos. 03AP-1167, 03AP-1231, 2004-Ohio-3312, ¶ 36; In re Patterson,134 Ohio App.3d 119, 130, 730 N.E.2d 439. Rather, the trial court has discretion to determine whether to place a child with a relative. In re D.S.,2007-Ohio-6781, at ¶ 15, citing In re S. W., 10th Dist. No. 05AP-1368,2006-Ohio-2958, ¶ 30. Accordingly, an appellate court must review the trial court's determination of whether to place the child with a relative under an abuse of *Page 19 
discretion standard. Patterson, 134 Ohio App.3d at 130. An abuse of discretion implies that the trial court's decision was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 35} It is clear from the record that the trial court considered Ms. Delapaz as a relative placement but ultimately rejected the idea. At the close of the hearing, the trial court found as follows:
 * * * the Court finds, even though I'm not sure it's required, but the issue's been raised, there is no suitable relative placement, as the candidate that was considered did not even have a home setting because the agency who was requested to perform this home study had had involvement with this person and ruled her out.
 That statement coupled with the list of police calls since 2001, makes this ruling out of this relative credible. Then you have to take into consideration she has her own problems with finances, with health, diabetes, mitral valve prolapse, respiratory failure, high blood pressure.
 We're talking about a three-year-old here. The paternal grandmother did not press the issue of a last regular visit in 2007 or to make calls to inquire as to how he was doing, how was his health. Basically called to put a bid in for placement and let it go.
 Further, there is no disputing the testimony that of this three-year-old's [sic] child's life, she's had approximately 11 visits, hardly an establishment of any deep relationship.
(July 31, 2008 Tr. at 78-79). These same considerations were echoed in the trial court's journal entry as well. (Aug. 11, 2008 JE, Doc. No. 90).
 {¶ 36} The trial court's findings were supported by the evidence presented. Jill McGee, the WCDJFS' worker assigned to Kayden's case, testified that in June *Page 20 
2006 the department requested to have a home study completed on Ms. Delapaz, but MCDJFS "declined to complete the home study due to the fact that they would not recommend her home for placement" based upon their prior contacts with her. (July 31, 2008 Tr. at 11). McGee testified that Ms. Delapaz was the only relative mentioned by Brandon as a possible placement. (Id.). McGee further testified that one of the reasons that MCDJFS declined to do a home study was the numerous calls placed from Ms. Delapaz's residence to the police, including calls for: "[p]hone harassment, disturbance, music, several of those. Officer wanted burglary, parking violation, domestic stand-by, unruly juvenile, domestic, domestic, domestic stand-by, numerous breaking and enterings, officer wanted, unruly juvenile, * * *." (Id. at 13). McGee also testified that WCDJFS' records indicate that Ms. Delapaz visited Kayden a total of eleven (11) times. (Id. at 24).
 {¶ 37} Ms. Delapaz testified, on cross-examination, that her son, Brandon, had a juvenile record and an adult record. (Id. at 55-56). Delapaz also admitted that the police have been called to her house for many different problems, including: domestic violence, unruly juvenile, breaking and entering, and emergency squad calls. (Id. at 60-61). Delapaz testified that she earns $25,000 or more working for MS Logistics but admitted that she has reduced rent and receives food stamps and Medicaid. (Id. at 62-65). Delapaz also admitted that she suffered from diabetes, mitral valve prolapse, and respiratory failure. (Id. at 70-71). *Page 21 
 {¶ 38} Under the circumstances of this case, we cannot find that the trial court abused its discretion by finding that placement with Delapaz would not be in Kayden's best interests. Furthermore, contrary to Brandon's assertions, the record demonstrates that WCDJFS did investigate relative placements, including those other than Delapaz. McGee testified that she sent letters to Cindy, Brandon, Berton Patterson (Cindy's father), Jodie Crawford (Cindy's mother), and Delapaz seeking information about possible relative placements for Kayden. (Id. at 19). The record also contains evidence that WCDJFS conducted a psychological evaluation and home study of Berton Patterson as a possible placement, though he was not ultimately accepted. (Department's Exs. 8-9).
 {¶ 39} For all these reasons, we find that Brandon's third assignment of error lacks merit and overrule it.
 {¶ 40} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 ROGERS and SHAW, J.J., concur. *Page 1