[Cite as *In re M.H.*, 2013-Ohio-1063.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY


IN THE MATTER OF:                    :

   M.H.                                         :          CASE NO.   CA2012-11-035

                                      :          O P I N I O N
                                                    3/22/2013

                                       :

                                       :

                                       :


APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 10AND0597


Susan Wollscheid, 121 West Market Street, P.O. Box 841, Washington Court House, Ohio 43160, guardian ad litem

Jennifer Hitt, 63 North Main Street, Suite B, London, Ohio 43140, for appellant, C.G.

Jess C. Weade, Fayette County Prosecuting Attorney, James B. Roach, 1st Floor Courthouse, 110 East Court Street, Washington Court House, Ohio 43160, for appellee, Fayette County Department of Job and Family Services


     **HENDRICKSON, P.J.**

     **{¶ 1}** Appellant, the biological mother of M.H., appeals a decision of the Fayette County Court of Common Pleas, Juvenile Division, granting permanent custody of the child to a children services agency.

{¶ 2} Fayette County Children Services filed a complaint on June 23, 2010, alleging M.H. was abused and dependent. The complaint alleged that M.H., who was five years old at the time, and her older brother, D.H., were the victims of sexual abuse by their oldest brother. The court adjudicated M.H. an abused and dependent child on July 28, 2010.[1] The oldest brother was removed from the home and M.H. and D.H. remained in their home with appellant with protective supervision by the agency.

{¶ 3} On August 2, 2010, less than two months after the first complaint, the agency filed a second complaint alleging M.H. was dependent and abused. The second complaint alleged that on August 1, 2010, M.H. was the victim of sexual abuse by an adult male. M.H. was again adjudicated an abused and dependent child. She was removed from appellant's home and placed in the temporary custody of the agency.

{¶ 4} On removal from her home, M.H. was placed in a foster home. While in foster care, she was diagnosed with post-traumatic stress disorder and was hospitalized for over a week after her behavioral problems escalated. In May 2011, the foster family notified the agency that they were no longer able to keep M.H. in their home due to the child's behavior problems.

{¶ 5} The agency was unwilling and unable to place M.H. in a long-term residential facility due to her young age, and, because it was the only option, placed the child back with appellant on May 5, 2011. Five days later, after behavioral problems at school, M.H. was hospitalized for 12 days at a mental health facility. She returned to appellant's home after hospitalization, but the court declined to approve the change in the case plan.

{¶ 6} The court held a review hearing on August 16, 2011 and heard evidence indicating there were cleanliness and safety issues in appellant's home. These issues

---

1. D.H. was adjudicated a dependent child on the same date.

included physical care, as the child had numerous bug bites, and testimony that while in appellant's care, the child was left alone with a convicted sex offender. The court determined that it was in M.H.'s best interest to remain in the temporary custody of the agency and ordered the child removed from appellant's home. This court affirmed the trial court's decision on appeal, finding that the trial court's decision to remove M.H. from appellant's home and continue temporary custody with the agency was supported by competent, credible evidence. *In re M.H.*, 12th Dist. App. No. CA2011-10-022, 2012-Ohio-2257.

{¶ 7} Following the trial court's review hearing, M.H. was placed in the care of her paternal grandmother. Problems arose with this placement, and M.H. was again hospitalized for behavior problems in December 2011. After a month's hospitalization, M.H. was placed in a therapeutic treatment foster home.

{¶ 8} On February 2, 2012 the agency filed for permanent custody of the child. At a hearing on the motion, the agency caseworker testified that the child has been hospitalized three times for her behavior, which includes biting, pulling hair, kicking, refusing to get dressed, and taking off her clothes. She indicated at one point, the child had to be transferred to the hospital in a police cruiser because of safety issues. The caseworker stated that M.H. has attention deficit hyperactive disorder, post-traumatic stress syndrome, and shows signs of bipolar disorder and radical attachment disorder. The child is not currently visiting with appellant based on the recommendations of the doctors who have been treating the child since January 2012.

{¶ 9} The caseworker indicated that the agency considered several relatives for placement, including an aunt who was eliminated as a possibility due to her boyfriend's felony convictions. The agency also considered an uncle, who has young children in his home, and expressed unrealistic expectations of how to deal with M.H.'s behavior problems, stating that her behaviors "would not happen in my home." The maternal grandmother was

not considered due to the fact that she is married to a sex offender who went to prison for the sexual abuse of his 11-year-old stepdaughter. The agency tried placement with the paternal grandmother, but M.H. inexplicably lost 20 pounds while with the grandmother and was not taking her medication on time. The grandmother denied services in the home, argued and would not cooperate with the workers. The father was excluded for placement because he has custody of M.H.'s brother, who has sexual issues with M.H.

{¶ 10} The caseworker testified that appellant is employed, but does not have regular income, and receives HUD housing. She was the victim of domestic violence by her boyfriend and has a protective order, but still maintains some form of contact. Appellant failed to give the agency proof of completing parenting classes, and did not complete a mental health evaluation which was requested because of reported bipolar issues and stress. The caseworker testified that the agency has concerns regarding appellant's judgment and her ability to protect the child as M.H. was sexually abused twice within two months, then when returned to appellant's home, the child was left alone with a convicted sex offender. The caseworker indicated M.H. needs to be in a home with caregivers who are trained to deal with her behavior issues, who are able to handle these issues, take her to appointments, and to provide a routine and long-term stability.

{¶ 11} The foster mother testified that as a therapeutic foster home they have special training to deal with different behavior problems, including anger, aggression and sexualized behaviors. The foster mother described M.H.'s behavior as "very complicated" and indicated the child has to be kept very busy, with no idle time, and that she gets into things, sneaks and lies. She indicated M.H. has had problems at school, including not wanting to do her work, throwing tantrums, swearing at teachers, throwing things, ripping clothes and hiding under the desk. She was "kicked off the bus" the previous year for engaging in sexualized behavior.

{¶ 12} The foster mother indicated M.H. has some of the same behaviors at home when she does not get her way, along with sexualized behaviors that require the child to be kept busy and supervised at all times. M.H. is in a "behavior class" at school for children who cannot be in a regular school setting because they are disruptive to other students. She started attending school for a half day, and has now worked up to attending a full day. She is in therapeutic counseling and takes medication. M.H. is improving in school and the foster mother indicated the child is making progress with her behavioral issues. M.H. has a bond with the foster mother, and calls her "mom." The foster mother indicated that she and her husband have thought about adopting M.H., but have not yet made an affirmative expression of this desire to the agency.

{¶ 13} Following the hearing, the trial court granted permanent custody of M.H. to the agency. Appellant now appeals that decision, and raises two assignments of error for our review:

{¶ 14} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND BY CLEAR AND CONVINCING EVIDENCE THAT THE MINOR CHILD COULD NOT BE PLACED WITH EITHER OF HER PARENTS WITHIN A REASONABLE TIME OR SHOULD NOT BE PLACED WITH EITHER OF HER PARENTS.

{¶ 15} THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTEREST OF THE MINOR CHILD TO PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF [MOTHER] AND PLACE THE MINOR CHILD IN THE PERMANENT CUSTODY OF FAYETTE COUNTY CHILDREN'S SERVICES, AND ERRED IN FAILING TO ASCERTAIN THE WISHES OF THE MINOR CHILD.

{¶ 16} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and

convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). An appellate court's review of a juvenile court's decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re Starkey,* 150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16 (7th Dist.). A reviewing court will reverse a finding by the juvenile court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re Rodgers* (2000), 138 Ohio App.3d 510, 520 (12th Dist.).

{¶ 17} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). Second, the court must find that any of the following apply: the child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1)(a), (b), (c) and (d); *In re E.B.,* 12th Dist. Nos. CA2009-10-139, CA2009-11-146, 2010-Ohio-1122, ¶ 22.

{¶ 18} The juvenile court found by clear and convincing evidence that M.H. had been in the temporary custody of the agency for more than 12 months of a consecutive 22-month period as of the date the agency filed the permanent custody motion and that granting permanent custody was in M.H.'s best interest. The court also found that M.H. could not be placed with either parent within a reasonable time and should not be placed with either parent.

{¶ 19} We begin with appellant's second assignment of error in which she challenges

the court's best interest determination. Specifically, appellant argues that there was little testimony on the interaction and relationship between M.H. and her parents and siblings, there was no evidence on the wishes of the child, a possible conflict between the guardian ad litem and attorney for the child roles existed, and that a legally secure placement could be achieved without a grant of permanent custody.

{¶ 20} R.C. 2151.414(D)(1) provides that in considering the best interest of a child in a permanent custody hearing:

> [T]he court shall consider all relevant factors, including, but not limited to the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 21} With respect to R.C. 2151.414 (D)(1)(a), the juvenile court found that the evidence showed M.H.'s bi-weekly supervised visits with her father went well. The court further found that appellant and the paternal grandmother both testified that M.H. interacts well with them. However, the court found there were problems when M.H. lived with appellant and problems when she lived with her grandmother. M.H. was sexually abused twice within a two month period while in the care and under the supervision of appellant, and when placed back in the home for a period of time, was again removed after the child was

left alone with a registered sex offender. The court found that while with the grandmother, M.H. inexplicably lost 20 pounds and was hospitalized upon removal from the home.

{¶ 22} The court further found that the evidence showed M.H. interacts well and has a positive relationship with her current foster parents. The court found M.H.'s behavior has improved since being placed in the current foster home, and she is now able to attend school for a full day. The foster parents understand that M.H. must be supervised constantly, kept busy, and monitored while around other children. The foster parents take her to counseling and ensure that she takes her medication. The court found that M.H. calls the foster mother "mom" and the child is improving and making positive progress in all aspects of her life.

{¶ 23} With respect to R.C. 2151.414(D)(1)(b), the juvenile court indicated that M.H. was seven years old. The court stated that she was not interviewed by the court and the child's wishes were not contained in the guardian ad litem report. The court concluded that her wishes were unknown.

{¶ 24} With respect to R.C. 2151.414(D)(1)(c), the juvenile court found that M.H. has been in the custody of the agency since the time of her removal on August 2, 2010 after a second incident of sexual abuse occurred. The court found that while in agency custody, the child has been placed with a foster family, back with appellant, with a paternal grandmother, and none of these settings were positive for the child. The court determined that the current placement in a therapeutic foster home is "the most safe and secure this child has experienced since coming into the agency's care." The court further found that the foster parents have discussed adopting M.H., but have not yet discussed adoption with the agency.

{¶ 25} With respect to R.C. 2151.414 (D)(1)(d), the juvenile court found that M.H. is "in desperate need of a legally secure and safe placement." The court indicated that M.H. was sexually abused twice while in appellant's home and when placed back in the home, appellant left the child alone with a registered sex offender. The court found that one of

M.H.'s brothers is placed with her father, which precludes M.H. from being placed in his custody. The court also found that the father testified that the brother spends up to three nights a week with appellant, and found the situation would also be problematic from this standpoint if M.H. were returned to appellant.

{¶ 26} The court also considered an uncle who expressed some interest initially, but who has young children, making placement in the home problematic with M.H.'s behavior problems. The court also found that an aunt and her boyfriend were not an appropriate placement due to a number of felony convictions.

{¶ 27} The court found that the maternal grandmother is married to a registered sex offender who victimized his 11-year-old stepdaughter, making placement impossible. Finally, the court found that the child's placement with the paternal grandmother was problematic, as the grandmother did not cooperate with service providers, and the child lost 20 pounds and was hospitalized while in the paternal grandmother's care.

{¶ 28} We find the trial court's findings regarding M.H.'s best interest are supported by sufficient, credible evidence. While appellant argues that she is able to take care of the child and the child's behavior was better while she was in appellant's care, issues of credibility were for the trial court to determine. "It is well-established that the juvenile court had the opportunity 'to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *In re C.B.,* 12th Dist. Nos. CA2008-01-002, CA2008-01-003, 2008-Ohio-5543, ¶ 18, quoting *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80 (1984).

{¶ 29} Further, while appellant argues there was little testimony on the interaction and relationship M.H. has with appellant, the court considered the testimony presented and considered appellant's testimony that she and child interact well. In addition, while appellant argues there is no information on the effect on M.H. from separation from her siblings, there

was evidence that due to sexual abuse and continuing behavior problems, exposure to M.H.'s siblings was not recommended by M.H.'s doctors.

{¶ 30} Finally, appellant argues that the court erred in not determining the child's wishes and that there was a potential conflict of interest in the dual role of guardian ad litem and attorney for the child.

{¶ 31} As discussed above, when determining a child's best interest in a permanent custody hearing, R.C. 2151.414 requires a court to consider all relevant factors, including "[t]he child wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." R.C. 2151.414(D)(1)(b). The trial court indicated that M.H.'s wishes were not contained in the guardian ad litem's report and the court did not interview the child. The guardian ad litem recommended granting permanent custody to the agency.

{¶ 32} While, in general, a court must consider the child's wishes or should determine whether the child is incapable of expressing her wishes, we find that based on the unique nature of the facts in this case, the trial court's failure to determine the child's wishes was not prejudicial error. The record indicates that M.H. has severe mental health issues. The court found that M.H. had been diagnosed with post-traumatic stress disorder. She has behavior problems, and the court found that the record is "replete with accounts of M.H.'s destructive rages." The court found the child "has broken items, thrown things, yelled and screamed until she literally exhausted herself." The severe behavior led to an IEP and until recently, M.H. was only able to attend school two hours a day. She was admitted to the mental health ward of the hospital on several occasions due to severe emotional outbursts. She has been physically and/or sexually aggressive with other children, was banned from the school bus and has been observed masturbating in front of others. Given these facts, the record fails to suggest that the child had the necessary maturity to provide a credible indication of her

wishes as to custody. *See In re A.T.*, 9th Dist. App. No. 23065, 2006-Ohio-3919, ¶ 63.

{¶ 33} Moreover, the record indicates that options for the child's placement are limited. She cannot be placed with her father because he has custody of M.H.'s brother. She cannot be placed with appellant due to safety concerns as the child was sexually abused twice while in appellant's care, then left in the care of a registered sex offender. Placement with the grandmother was problematic because she failed to cooperate with service providers, felt their presence was intrusive, did not agree with their recommendations and thought her granddaughter should be able to keep things private. Given the specific facts of this case, we find the failure to determine the child's wishes, or to determine if she was capable of expressing her wishes, was not reversible error. See *In re E.W.*, 10th Dist. Nos. 05AP-1088, 05AP-1089, 05AP-1090, 05AP-1091, 2006-Ohio-2609, ¶ 11.

{¶ 34} Likewise, we find no error in the court's failure to consider the need for a separate counsel and guardian ad litem for the child. Generally, when an attorney is appointed as guardian ad litem, "that attorney may also act as counsel for the child, absent a conflict of interest." *In re Holt*, 10th Dist. No. 03AP-355, 2003-Ohio-5580, ¶ 20. In determining whether a conflict exists, courts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child. *In re B.K.*, Butler App. No. CA2010-12-324, 2011-Ohio-4470, ¶ 19. Such appointment may be necessary when the child has consistently and repeatedly expressed a strong desire that is inconsistent with the guardian ad litem's recommendations. *Id.*

{¶ 35} There was no indication at any point in the proceedings that the child's wishes differed from that of the guardian ad litem, nor was the issue of a possible conflict raised for the trial court to consider. Appellant had the opportunity to cross-examine the guardian and failed to question her on this issue. Given the fact that there is no evidence of a conflict, and based on the specific facts of this case discussed above, we find no error in this respect.

Appellant's second assignment of error is overruled.

{¶ 36} In her first assignment of error, appellant argues that the court erred in determining that M.H. could not or should not be placed with either parent within a reasonable time. Appellant argues that she completed her case plan and substantially remedied the conditions that led to M.H.'s removal from the home.

{¶ 37} However, while the court made a finding that the child could not or should not be placed with either of her parents, the court also found that M.H. had been in agency custody for 12 of 22 months. When a court makes a finding that a child has been in agency custody for 12 of 22 months, a determination that the child cannot be returned to her parents within a reasonable time is unnecessary. *In re A.F.*, 12th Dist. No. CA2011-12-233, 2012-Ohio-2958.

{¶ 38} While the court's finding that M.H. could not be placed with her parents was not required, we note that the finding was supported by the evidence. As discussed above, M.H. could not be placed with her father because he has custody of her brother. The trial court also determined that the child could not be placed with appellant, as appellant was unable to protect the child and to provide a safe environment for her. Appellant's first assignment of error is overruled.

{¶ 39} Judgment affirmed.

S. POWELL and PIPER, JJ., concur.