[Cite as *In re C.E.J.*, 2014-Ohio-2713.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | : | |
| C.E.J. | : | CASE NO. CA2013-04-059 |
| | : | O P I N I O N<br>6/23/2014 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2011-0403

Fred S. Miller, Baden & Jones Bldg., 246 High Street, Hamilton, Ohio 45011, for appellant
Richard J.

Dawn S. Garrett, 9435 Waterstone Blvd., Suite 140, Cincinnati, Ohio 45249, for appellee
Kelly S.

Anne E. Lucas, 215 East Ninth Street, Cincinnati, Ohio 45202, guardian ad litem

**RINGLAND, P.J.**

{¶ 1}  Appellant, Richard J. (Father), appeals the decision of the Butler County Court

of Common Pleas, Juvenile Division, in a custody matter involving his minor daughter, C.E.J.

 For the reasons detailed below, we affirm in part and reverse in part the judgment of the trial

court and remand this matter for further proceedings.

{¶ 2}  Father and Kelly S. (Mother) are the natural parents of minor C.E.J., born on

March 13, 2007. Mother and Father divorced in 2009 and had a shared parenting plan in Butler County Domestic Relations Case No. DR2008-10-1340.

{¶ 3} This case began when C.E.J. alleged physical and sexual abuse by Mother's boyfriend, Ryan Beckman. The allegations were made by C.E.J. to her therapist in January, 2011 and subsequently investigated by Butler County Children's Services (BCCS).

{¶ 4} Following the allegation of sexual abuse, C.E.J. was interviewed and examined by the Mayerson Center for Safe and Healthy Children at Cincinnati Children's Hospital. In addition, C.E.J. also began seeing a counselor, Dr. Kelly Armbruster, in regards to nightmares that she had been having involving Beckman.

{¶ 5} On January 25, 2011, Father filed a complaint in abuse and dependency. The trial court issued emergency ex parte orders stating that C.E.J. was not permitted to have any contact with Beckman.

{¶ 6} On February 23, 2011, Anne Lucas was appointed to serve in a dual capacity as attorney for C.E.J. and guardian ad litem.

{¶ 7} On June 1, 2011, C.E.J. was adjudicated a dependent child by agreement of the parties and Father withdrew his abuse and neglect allegation. The parties subsequently filed separate motions for legal custody of C.E.J.

{¶ 8} On September 14, 2011, the trial court began dispositional proceedings. During the hearing, Lucas recounted her preliminary findings in the case and recommended:

> Well, Your Honor, this is a hard point to be in the case. Obviously, I believe Ms. Armbruster and my experience talking with [C.E.J.] is that she does not want to be around [Beckman]. She's a four year old child. She doesn't want to be around [Beckman]. She wants to spend time with her mother. She likes being at home. Her home is where she is brought when her parents were together, it's paternal grandparents' home. Kelly Armbruster testified today that [C.E.J.] is going back and forth about what [Beckman] did or didn't do to her. It may be beneficial at this point to allow…to have some contact with [Beckman], supervised by mother. Maybe not all the time but some limited

period of time to see if when [C.E.J.] is going back to therapy then we can see some changes in her behavior. She is a very articulate child. She has a very good relationship with Ms. Armbruster, I believe. She may be able to further help us understand what is going on with her. But for a four year old child to determine whether or not her mother goes on with her life and with the father of her sibling, I don't know if that can be sustained. I don't believe as Ms. Armbruster also testified that [C.E.J.] is in danger from [Beckman] at this time. I would also ask that mother and father be ordered to do co-parenting counseling.

At the close of the first hearing, the trial court modified its temporary parenting order in the best interest of the child. The new order provided that Beckman could be in the presence of C.E.J. provided that Mother or Beckman's mother was present. The new order, therefore, allowed Beckman to remain in the home he shared with Mother during Mother's parenting time with C.E.J.

{¶ 9} On October 4, 2011, Father filed a motion to disqualify Lucas as the GAL. In his motion, Father requested that Lucas remain as C.E.J.'s attorney, but asked that a separate GAL be appointed to represent the child's best interests. Father alleged that Lucas had a conflict of interest because C.E.J.'s wishes were inconsistent with Lucas' recommendation as GAL.

{¶ 10} On November 22, 2011, the trial court denied Father's motion to disqualify after "contemplating the child's age, 4 years, the child's maturity, the testimony of the child's counselor, and the issue consisting of contested custody and visitation, and provision for a safe home and need for family preservation." Father filed a notice of appeal with this court on September 16, 2011, which this court dismissed on October 13, 2011 because of a lack of a final appealable order. *In the Matter of: C.E.J.*, 12th Dist. Butler No. CA2011-09-170 (Oct. 13, 2011).

{¶ 11} In December of 2011, C.E.J. made a second allegation of sexual abuse involving Beckman. Father took C.E.J. to the Cincinnati Children's Hospital after she alleged

that "[Beckman] spanked me on my pee pee." The allegations were referred to BCCS. Following an investigation, BCCS did not pursue any further action.

{¶ 12} On January 4, 2012, the trial court conducted an in camera interview with C.E.J. in the presence of Lucas and C.E.J.'s counselor, Dr. Armbruster.

{¶ 13} On August 29, 2012, the court held another dispositional hearing and the parties concluded presentation of their cases. Lucas filed her final report and recommendations as the GAL and attorney for C.E.J. on October 21, 2012. In her report, Lucas noted that BCCS had completed investigations of two alleged incidents of sexual abuse by Beckman during the pendency of the case with neither of those cases resulting in ongoing services or court filings on behalf of BCCS. In addition, Lucas also noted that a psychological evaluation concluded that the "allegations of abuse appear to be unfounded due to the inconsistent statements regarding the allegations of sexual abuse."

{¶ 14} Pertinent to C.E.J.'s wishes, Lucas noted that "C.E.J. reports that she loves playing with her father and grandfather and that she wants to live with her father." However, Lucas also noted "C.E.J. represents that she misses [her little brother] and her Mother when she isn't at her Mother's home. C.E.J. says she wants to live with [her little brother] and 'Mommy,' but she doesn't like Mr. Beckman." In conclusion, Lucas recommended "[b]ecause [C.E.J.] is very bonded to both families, and because she wants to spend time with both families, she should spend equal amounts of time in both households, as she has done for most of her life." However, Lucas also recommended that Mother's shared parenting plan become the order of the court, which named Mother as the residential parent.

{¶ 15} On March 18, 2013, the trial court issued its decision, inter alia, appointing Mother as the residential parent, but also providing Father with companionship time of two weeks (14 days) per month. Father now appeals, raising two assignments of error for review:

{¶ 16} Assignment of Error No. 1:

- 4 -

{¶ 17} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT DID NOT REMOVE THE GUARDIAN AD LITEM/ATTORNEY FOR C.E.J., NAME HER TO REMAIN AS THE ATTORNEY FOR C.E.J., AND DESIGNATE A NEW PERSON TO BE THE GUARDIAN AD LITEM FOR C.E.J.

{¶ 18} In his first assignment of error, Father alleges the trial court erred by allowing Lucas to maintain dual roles as GAL and C.E.J.'s attorney during the custody dispute. Father argues that Lucas should not have been permitted to act in the additional capacity as GAL because C.E.J. has "consistently and repeatedly" expressed a strong desire to live with Father. However, because Lucas recommended that Mother be named as C.E.J.'s residential parent, Father alleges there was a conflict of interest between the dual roles of GAL and attorney. Therefore, Father maintains the trial court should have disqualified Lucas as GAL, but should have allowed her to remain as C.E.J.'s attorney. We find Father's argument is without merit.

{¶ 19} Generally, when an attorney is appointed as GAL, "that attorney may also act as counsel for the child, absent a conflict of interest." *In re M.H.*, 12th Dist. Fayette No. CA2012-11-035, 2013-Ohio-1063, ¶ 34, quoting *In re Holt*, 10th Dist. Franklin No. 03AP-355, 2003-Ohio-5580, ¶ 20. The role of a GAL is to investigate the child's situation and then ask the court to do what is in the child's best interest, while the role of an attorney is to zealously represent his client within the bounds of the law. *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232 (1985).

{¶ 20} Because the guardian ad litem is permitted to maintain dual roles in a custody dispute, "a court is not required to appoint separate counsel unless the [G.A.L.'s] recommendations regarding their best interest conflict with the children's wishes." *In re B.K.*, 12th Dist. Butler No. CA2010-12-324, 2011-Ohio-4470, ¶ 19; *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500; *see also* Juv.R.4(C); R.C. 2151.281(H). Generally, the appointment of

independent counsel is necessary when the child has "consistently and repeatedly expressed a strong desire that is inconsistent with the guardian ad litem's recommendations." *In re M.H.*, at ¶ 34.

{¶ 21} Based upon a thorough review of the record, we find the trial court did not err in denying Father's motion to disqualify Lucas as GAL based upon an alleged conflict of interest. As this court has previously acknowledged, "[i]n determining whether a conflict exists, courts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child." *Id.*, citing *In Re B.K.* at ¶ 19.

{¶ 22} In the present case, C.E.J. was four years old at the time of the first dispositional hearing and five years old at the time of the conclusion of the proceedings. Contrary to Father's arguments, this is not an instance where C.E.J. has "consistently and repeatedly" expressed her desire to live with Father. Indeed, as noted in Lucas' recommendations as GAL and attorney, C.E.J. expressed different wishes at different times. For example, in her report, Lucas noted that "C.E.J. reports that she loves playing with her father and grandfather and that she wants to live with her father." However, Lucas also noted "C.E.J. represents that she misses [her little brother] and her Mother when she isn't at her Mother's home. C.E.J. says she wants to live with [her little brother] and 'Mommy,' but she doesn't like Mr. Beckman."

{¶ 23} We have little doubt that this was a difficult case, especially considering the allegations of sexual abuse. However, we cannot say the trial court erred in denying Father's motion to disqualify Lucas as GAL or in failing to identify a conflict of interest. *See, e.g., In re K.*, 8th Dist. Cuyahoga No. 83410, 2004-Ohio-4629, ¶ 9 ("[t]he level of cognitive maturity exhibited by a four-year-old non-developmentally delayed child is not that which would indicate the need for independent legal counsel"); *In re Shrider*, 3d Dist. Wyandot No. 16-05-

- 6 -

20, 2006-Ohio-2792, ¶ 24 ("Simply put, the children lacked the necessary maturity to give any credible testimony to the court about their wishes with regard to custody").

{¶ 24} The record reflects that Lucas did not believe that there was a conflict of interest between her dual roles as GAL and attorney for C.E.J. As previously noted, Lucas had been involved in this case as the GAL and attorney for C.E.J. since February, 2011 and was knowledgeable of the history of the case, as well as the allegations of sexual abuse and the subsequent investigations by BCCS. The trial court confirmed C.E.J.'s wishes, ability to express her desired living arrangements, and maturity level in an in camera interview. Considering the age of C.E.J. at the time, the history of this case, and the fact that C.E.J. expressed different desires at different times, we find the trial court did not err in denying Father's motion to disqualify Lucas as C.E.J.'s guardian ad litem.

{¶ 25} In addition, we also note that Father failed to show the trial court's decision in any way prejudiced his rights or affected the outcome of the case. This is even more apparent considering the fact that Father now complains that Lucas should be disqualified as GAL, but permitted to remain as C.E.J.'s attorney. However, based on Father's arguments, we note that removing Lucas as the GAL would not resolve the alleged conflict of interest of which Father complains. In fact, the move would be counter-intuitive. While Father argues that Lucas should be removed as GAL, but permitted to remain as C.E.J.'s attorney, his argument is based on the allegation that Lucas did not zealously represent C.E.J.'s wishes, which relates to Lucas' role as C.E.J.'s attorney, and not her role as the GAL. Therefore, Father's first assignment of error is overruled.

{¶ 26} Assignment of Error No. 2:

{¶ 27} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT DID NOT ISSUE ORDERS REGARDING CHILD SUPPORT, VISITATION, THE TAX EXEMPTION, AND INSURANCE COVERAGE.

- 7 -

{¶ 28} In his second assignment of error, Father argues the trial court erred when it failed to make any specific provisions regarding the other attendant custody factors contained in the final order dated March 18, 2013. We agree.

{¶ 29} In its final disposition of the case, the trial court issued its findings of fact and conclusion of law. In its entry, the trial court included the following orders:

> (1) The Mother, * * * shall be appointed the residential parent for all purposes, including school and medical purposes; (2) The Father, * * * shall have companionship time of two weeks (14 days) per month as agreed by the parents to best meet [C.E.J.'s] needs and best interest, which may involve alternative weekly, bi-weekly or otherwise agreed to by the parents, provided the father has two-weeks (14 days) per month; (3) Father, Mother, and Ryan Beckman shall engage and complete co-parenting counseling as the counselor requests and recommends, the cost to be shared equally; (4) C.E.J. shall continue therapy with Dr. Kelly Armbruster, PhD, for as long as Dr. Armbruster deems necessary. The costs to be shared equally; (5) All parties shall cooperate with the therapists' request for their involvement with C.E.J.'s therapy; (6) Mother and Father shall utilize OurFamilyWizard.com in order to schedule father's companionship time and C.E.J.'s extracurricular activities; (7) Both parents be subject to minimal orders of child support; (8) The Attorney/GAL shall be relieved of her duties six months after this entry is file stamped, unless otherwise ordered.

{¶ 30} Based on our review, we agree with Father and sustain his second assignment of error. We find the trial court's child support order lacks the specificity required for the parties to adequately determine their rights and obligations. In particular, we note the trial court failed to make any specific orders with respect to: (1) the child support obligation under R.C. 3119.02,[1] (2) the visitation schedule under R.C. 3119.08, (3) which party is permitted to take the tax exemption under R.C. 3119.82, and (4) which party is responsible for health care insurance under R.C. 3119.30. A more specific delineation of these provisions in the trial court's order is required. *See* R.C. Chapter 3199. Furthermore, a more specific order is

---

1. We also note the absence of a child support worksheet, as required under R.C. 3119.022. *See Stevens v. Stevens*, 12th Dist. Warren No. CA2009-02-028, 2010-Ohio-1104, ¶ 37.

necessary, especially in light of the fact that Mother and Father have difficulty communicating with each other. Therefore, we remand this matter to the trial court to clarify its order and specify specific provisions consistent with R.C. 3119.02, 3119.08, 3119.82, and 3119.30. Accordingly, appellant's second assignment of error is well-taken and sustained.

{¶ 31} Judgment affirmed in part, reversed in part, and cause remanded to the trial court for further proceedings consistent with this opinion.

S. POWELL and PIPER, JJ., concur.