[Cite as *In re D.N.*, 2014-Ohio-5397.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

FAYETTE COUNTY

IN THE MATTER OF:                    :

       D.N., et al.                    :

                                        :

                                        :

CASE NO. CA2014-07-016

O P I N I O N
12/8/2014

APPEAL FROM FAYETTE COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 12AND0375 & 12AND0376

Kristina M. Oesterle, P.O. Box 314, Washington C.H., Ohio 43160, Guardian Ad Litem

Jennifer J. Hitt, 63 North Main Street, Suite B, London, Ohio 43140, for appellant

Jess Weade, Fayette County Prosecuting Attorney, 110 East Court Street, Washington C.H., Ohio 43160, for appellee

**S. POWELL, J.**

{¶ 1} Appellant ("Father"), the biological father of D.N. and A.N., appeals a decision of the Fayette County Court of Common Pleas, Juvenile Division, granting permanent custody of his children to a children services agency.

{¶ 2} On May 11, 2012, Fayette County Children Services ("FCCS") filed two complaints alleging that D.N. and A.N. were abused and neglected children, and moved for

emergency temporary custody. The complaints alleged that a passer-by had observed D.N., who was three years old at the time, in a diaper on a public street with no adult supervision, and that A.N., who was almost two years old at the time, was found strapped in a car seat on the same street. The complaints also alleged that the children's biological mother ("Mother") was arrested for child endangerment, and that Father was found hiding in a nearby house where he was subsequently arrested on an outstanding warrant.

{¶ 3} The juvenile court granted temporary custody to FCCS on May 11, 2012, and after a hearing the following week, affirmed that temporary custody would remain with FCCS pending the disposition of the case. A guardian ad litem ("the GAL") was appointed for the children on May 18, 2012, and a case plan was approved in June 2012 with the goal of returning the children to their parents.

{¶ 4} On September 25, 2012, the juvenile court adjudicated D.N. and A.N. dependent children, and ordered that temporary custody remain with FCCS. The juvenile court then held several review hearings between October 2012 and April 2014, and extended FCCS's temporary custody of the children each time. Prior to the last review hearing, FCCS filed a motion for permanent custody.

{¶ 5} The permanent custody hearing was held on May 13, 2014. Mother was present with her attorney. Father was also present with his attorney, having been transported to the proceedings from prison. However, Father was removed from the courtroom at his request at the beginning of the hearing. Thereafter, the juvenile court heard the testimony of two witnesses: the FCCS caseworker who was responsible for the case, and the children's GAL. Mother elected not to testify.

{¶ 6} The FCCS caseworker, Margo Robinson, provided information on Father's and Mother's compliance with the case plan. Robinson testified that the children had been in the custody of FCCS continuously since the case was opened on May 11, 2012. During that

- 2 -

time, she stated that Father had not complied with the case plan, and had only visited the children once, in September 2012. Robinson stated that Father was serving time in prison in Highland County for possession of heroin, and had been incarcerated nine or ten times on various charges since the case was opened in 2012. She also noted that for the majority of the case there was a protection order in place to keep Father away from Mother.

{¶ 7} Continuing, Robinson testified that Mother had substantially complied with the case plan and visited the children regularly when she was not incarcerated. Robinson observed during Mother's visits that Mother was bonded with the children and interacted with them appropriately, and that the children were bonded with her. Robinson also stated Mother had completed the parenting classes, and had passed all three drug screens she took between her release from substance abuse treatment in August 2013 and the permanent custody hearing.

{¶ 8} However, Robinson also voiced several concerns. She noted that Mother had been incarcerated 12 times since 2012 for probation violations, theft, and child endangerment, including a span of eight consecutive months during which she was either incarcerated or in a substance abuse treatment program. Robinson also pointed out that Mother had not been able to maintain stable housing or steady income. In addition to being incarcerated, Mother had had four different addresses during the case, and was presently living in a small house with her elderly grandparents. Mother had not been employed at any point during the case, and had no immediate job prospects. Further, according to Robinson, Mother's compliance with the case plan decreased markedly after she had the protection order against Father dropped in the fall of 2013.

{¶ 9} In addition to Robinson's testimony, the juvenile court heard testimony from the GAL about the report she prepared regarding the children's best interests. In her report, the GAL indicated that D.N., who was five years old at the time of the GAL's interview with him,

- 3 -

said that he still wanted to visit Mother. A.N., who was approximately three and one-half years old at the time of her interview, indicated that she wanted to live with Mother. Nevertheless, the GAL reported that Mother had admitted during her interview that she was not yet prepared to take custody of the children due to unsuitable housing and lack of income. The GAL's report therefore concluded that because D.N. and A.N. required permanency and stability in their lives, and because Mother and Father were unable to provide for the children's basic needs, permanent custody should be granted to FCCS.

{¶ 10} In her testimony, the GAL acknowledged a bond between Mother and children. She also testified that she had observed some of Mother's visits with the children, and that they seemed to enjoy being with their mother. Yet, when asked to assess the maturity of the children, the GAL stated that the children were on target developmentally, but "I don't know that I'd necessarily rely on their opinions for what's in their best interest." Hence, the GAL affirmed her recommendation that permanent custody be granted to FCCS.

{¶ 11} On June 13, 2014, the juvenile court granted FCCS's motion for permanent custody of D.N. and A.N. Father now appeals, raising one assignment of error.

{¶ 12} THE [JUVENILE] COURT ERRED AND ABUSED ITS DISCRETION IN FINDING BY CLEAR AND CONVINCING EVIDENCE THAT IT WOULD BE IN THE BEST INTEREST OF THE MINOR CHILDREN TO PERMANENTLY TERMINATE THE PARENTAL RIGHTS OF [FATHER] AND PLACE THE MINOR CHILDREN IN THE PERMANENT CUSTODY OF FAYETTE COUNTY CHILDREN SERVICES BY NOT APPOINTING A SEPARATE ATTORNEY TO ADVOCATE FOR THE WISHES OF THE MINOR CHILDREN.

{¶ 13} Before a natural parent's constitutionally protected liberty interest in the care and custody of his children may be terminated, the state must prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 769, 102 S.Ct. 1388 (1982). Appellate review of a juvenile court's

- 4 -

decision granting permanent custody is limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re M.H.*, 12th Dist. Fayette No. CA2012-11-035, 2013-Ohio-1063, ¶ 16.

{¶ 14} Pursuant to R.C. 2151.414(B)(1), a juvenile court may terminate parental rights and award permanent custody to a children services agency if it makes findings pursuant to a two-part test. *In re M.H.* at ¶ 17. First, the juvenile court must find clear and convincing evidence that the grant of permanent custody to the agency is in the best interest of the children, utilizing, in part, the factors of R.C. 2151.414(D). *Id.* Second, the court must find that any of the following apply:

> [T]he child is abandoned; the child is orphaned; the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; or where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent.

*Id.*, citing R.C. 2151.414(B)(1).

{¶ 15} The only aspect of the juvenile court's decision that Father calls into question in this appeal is the juvenile court's finding with respect to one of the best interest factors. In determining the best interest of the child, R.C. 2151.414(D)(1)(b) requires the court to consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." Father contends that the juvenile court did not properly consider the wishes of D.N. and A.N. because it did not appoint separate counsel for them when it appeared there was a conflict between the GAL's recommendation and the children's wishes.

{¶ 16} At the outset, we note that Father elected to leave the permanent custody hearing before either of the two witnesses were called, and thus failed to raise his objection to the juvenile court. Generally, a party's failure to draw the lower court's attention to a

potential error, by objection or otherwise, results in a waiver of the issue for purposes of appeal, unless we find plain error. *In re T.J.*, 12th Dist. Preble No. CA2008-10-019, 2009-Ohio-1844, ¶ 34. Invocation of the plain error doctrine in civil cases is strictly limited to the "'extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *Id.* at ¶ 34-35, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

{¶ 17} In support of his argument that the juvenile court should have appointed separate counsel for the children, Father observes that Juv.R. 4(A) provides that children have the right to counsel where they are subject to a juvenile proceeding. He also points to a case from the Eleventh Appellate District for the proposition that where a guardian ad litem's recommendations are in conflict with the child's wishes, the child is unrepresented in the proceedings. *See In re Williams*, 11th Dist. Geauga Nos. 2002-G-2454 and 2002-G-2459, 2002-Ohio-6588. It therefore appears to be Father's position that the juvenile court could not have properly considered the wishes of D.N. and A.N. because the children were not properly represented at the hearing. However, Father's position is based on a misinterpretation of this point of law.

{¶ 18} Generally, when an attorney is appointed as guardian ad litem, that attorney may also act as counsel for the child, absent a conflict of interest. *In re B.K.*, 12th Dist. No. Butler CA2010-12-324, 2011-Ohio-4470, ¶ 19. The Ohio Supreme Court reviewed the *Williams* case to which Father refers, and noted approvingly that:

> Like other courts that have reached this conclusion, the [Eleventh Appellate District] recognized that courts should make a determination, *on a case-by-case basis*, whether the child actually needs independent counsel, *taking into account the maturity of the child* and the possibility of the guardian ad litem being appointed to represent the child.

- 6 -

(Emphasis added.) *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, ¶ 17. In other words, although it is possible for a conflict to arise between the distinct roles of guardian ad litem and counsel for the child, neither the Eleventh Appellate District nor the Ohio Supreme Court suggested, as Father does, that a child has an absolute right to separate counsel when the guardian ad litem's recommendations conflict with the wishes of the child. *Id.* at ¶ 18.

{¶ 19} Rather, where the guardian ad litem's recommendations conflict with the wishes of the child, the juvenile court must, on a case-by-case basis, assess the maturity of the child and determine whether the child actually needs separate counsel. *In re B.K.*, 2011-Ohio-4470 at ¶ 19. "Such appointment may be necessary when the child has consistently and repeatedly expressed a strong desire that differs and is otherwise inconsistent with the guardian ad litem's recommendations." *Id.*

{¶ 20} Based on the facts of this case, we find no error in the juvenile court's decision not to appoint the children separate counsel. While it may be true that A.N. expressed a desire to live with Mother, and D.N. expressed a desire to visit with Mother, there is no indication that the desire was strong, or that they expressed the desire consistently or repeatedly. *Id.* at ¶ 20. The GAL filed a number of reports over the two years that D.N. and A.N. were in the custody of FCCS. Most of the reports indicate that the children were well-adjusted to their foster homes. Indeed, the final report – the same report which indicated that D.N. still wanted to visit with Mother – suggested that D.N. would rather live with his former foster parents than with Mother.

{¶ 21} Further, at the time of the permanent custody hearing, D.N. and A.N. were five years old and three and one-half years old, respectively. Although it is not unusual for children of such young ages to express a desire to be with their parents, this desire does not necessarily equate with a desire to remain in the parents' household. *See In re G.C. & M.C.*, 8th Dist. Cuyahoga No. 83994, 2004-Ohio-5607, ¶ 9. This is particularly so where, as here,

the consequences of the issues with which the parents are struggling – drugs, lack of adequate housing, unemployment, incarceration – are not readily understood by young children. *See, e.g., In re Lane*, 3d Dist. Marion Nos. 9-03-61 and 9-03-62, 2004-Ohio-2798, ¶ 45 (finding no error in failing to appoint separate counsel where the children lacked the maturity to make a meaningful representation of their wishes and there was overwhelming evidence to support the court's findings that termination of parental rights was in the child's best interests).

{¶ 22} The juvenile court's decision makes clear that it duly considered the testimony of both Robinson and the GAL that the children appeared to be bonded with Mother. The juvenile court also noted that A.N. expressed the desire to live with Mother, and D.N. wanted to continue to visit Mother. Yet, taking into account all of the significant issues experienced by Mother and Father, the juvenile court found clear and convincing evidence that the children need a legally secure permanent placement, and that such a placement cannot be achieved without a grant of permanent custody to FCCS. There is ample credible evidence in the record to support the juvenile court's determination.

{¶ 23} For the foregoing reasons, Father's single assignment of error is overruled.

{¶ 24} Judgment affirmed.

RINGLAND, P.J., and M. POWELL, J., concur.