JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-mother appeals the judgment of the Cuyahoga County Common Pleas Court, Juvenile Division, awarding permanent custody of her children, G.C. M.C., to the Cuyahoga County Department of Children and Family Services. For the reasons that follow, we affirm.
 {¶ 2} Appellant is the mother of G.C. M.C., whose dates of birth are June 20, 1999 and April 24, 2001, respectively. In January 2001, the Cuyahoga County Department of Children and Family Services ("CCDCFS") removed G.C. from appellant's home based on allegations of neglect and dependency. M.C. was removed in May 2001, shortly after her birth, apparently for the same reason. The children were reunited[1] with appellant in July 2002, only to be returned to the agency's temporary custody approximately three weeks later when appellant was arrested on charges of aggravated murder, attempted murder and felonious assault, as indicted in Cuyahoga County Common Pleas Case No. CR-427460.[2] In its amended complaint, CCDCFS alleged that appellant's repeated criminal activity and incarcerations "prevent[ed] her from being able to provide proper care and support for the children."
 {¶ 3} The trial court appointed Mark Witt as guardian ad litem for the children. Eventually, Theordore Amata was appointed as guardian ad litem for the mother, in addition to her appointed counsel. Counsel was similarly appointed for the children's respective fathers, although neither is a party to this appeal.[3] In March 2003, appellant was acquitted of all charges contained in Case No. CR-427460. In July 2003, however, she was arrested in Cuyahoga County and subsequently indicted for drug-related offenses in Case No. CR-443845. She posted bond but, in August 2003 was arrested yet again, this time in Lorain County, on several charges, including, but not limited to, aggravated murder. She remains in custody at the time of this appeal awaiting trial on those charges.[4]
 {¶ 4} It was CCDCFS's position that permanent custody is in the children's best interests because, among other reasons, appellant is unable to care for her children due to her frequent arrests. At the adjudicatory and dispositional hearing that took place contemporaneously in November 2003, counsel for appellant requested that separate counsel be appointed for G.C, which the court denied. The court ultimately found the children to be neglected and dependent. Relying, in part, on the recommendation of the children's guardian ad litem, the court awarded permanent custody to CCDCFS, finding it in the children's best interests and that there existed "a need for permanency" for the children.
 {¶ 5} Appellant is now before this court and assigns five errors for our review.
 I. Failure to Appoint Separate Counsel for G.C. {¶ 6} In her first assignment of error, appellant contends that the trial court erred when it denied her request for the appointment of separate counsel for G.C.
 {¶ 7} A juvenile has a right to counsel in a proceeding to terminate parental rights, based on the juvenile's status as a party to the proceeding. See In re Williams,101 Ohio St.3d 398, 2004-Ohio-1500, at ¶ 17, citing In re Janie M. (1999),131 Ohio App.3d 637, 639. This is so because "a child who is the subject of a juvenile court proceeding" is a "party" to that proceeding according to Juv.R. 2(Y). Id.; see, also, R.C.2151.352; Juv.R. 4(A). Courts must determine, however, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child. Although a guardian ad litem can serve in the dual roles of advocate and guardian, the Williams court acknowledged the possibility of a "fundamental conflict in a dual-representation situation," noting that the duty of a guardian ad litem is to "recommend to the court what the guardian feels is in the best interest" of the child, while the duty of a lawyer to a child client is "to provide zealous representation" for the child's position. Id. at ¶ 18.
 {¶ 8} We see no need for independent counsel in this case. Appellant relies on comments made by the children's foster mother indicating that G.C. wanted "to see her mother." Appellant equates this comment with a desire on G.C.'s part to live with her mother, which is contrary to the guardian ad litem's recommendation to award permanent custody to CCDCFS.
 {¶ 9} As this author expressed in a recent decision of this court, it is unlikely that a four-year-old child is able to exhibit the level of cognitive maturity sufficient to indicate the need for independent legal counsel. See In re K. K.H.,
Cuyahoga App. No. 83410, 2004-Ohio-4629. Indeed, not only did G.C. state that she wished to "see" her mother, she also stated to her guardian ad litem that she wanted to live with the foster mother. As stated by the court, it is not unusual for a young child to express a desire to see his or her parent. In individuals other than the very young, the desire to see one's parent certainly would not equate with a desire to remain in that parent's household. In the very young, such inconsistency only underscores the lack of cognitive maturity necessary for the appointment of independent counsel.
 {¶ 10} Appellant's first assignment of error is not well taken and is overruled.
 {¶ 11} Failure to Allow Cross-Examination
 {¶ 12} In her second assignment of error, appellant contends that the trial court erred when it did not allow her to cross-examine the foster mother.
 {¶ 13} The record reveals that CCDCFS called the foster mother as its witness. Because CCDCFS did not indicate in discovery that it intended to call this witness, the trial court did not permit CCDCFS to use this witness to prove any allegations contained in the amended complaint. The trial court did, however, inquire of the foster mother as to how the children were doing. The foster mother testified that both children were doing well, but that G.C. had somewhat of a setback upon return from appellant's home in August 2002. Appellant requested the opportunity to cross-examine this witness, to which CCDCFS joined. In refusing to allow appellant to do so, the trial court stated:
 {¶ 14} "I allowed the [foster mother] to speak because I think it is important that people that take time off to come down to court and sit all day, part of the day, that they have an opportunity at least to have some say. And I did not want to let this witness leave here without being able to address the court in some limited manner.
 {¶ 15} "She should have been a witness, listed as a witness. I was not going to allow her to be treated as an ordinary witness, but I did want to have her speak to me about the children, because I want her to know that this court certainly welcomes her input.
 {¶ 16} "So I was not about to send her back out of here because of some technicality in whether she could testify or not. And I am able to, just as I ignore a whole lot [of] other stuff that happened, ignore testimony that is inappropriate.
 {¶ 17} "I will sanitize what I heard and will just bear in mind what she said about how the children are doing.
 {¶ 18} "They are okay in their placement, how long they have been with her, and that sort of thing.
 {¶ 19} "Other things she said about the gun,[5] what [G.C.] may or may not have seen, I am not interested in that from this witness.
 {¶ 20} "[CCDCFS] would have to take that up with somebody else, if it wishes, but I think it is important that people like that have an opportunity to be heard.
 {¶ 21} "We don't have enough good foster parents as it is. I don't want to discourage somebody from being a foster parent because of the way they get treated coming to court."
 {¶ 22} However noble the trial court's intentions, a party is entitled to cross-examine a witness, whether that witness is called by another party or by the court. See, generally, Statev. Green (1993), 66 Ohio St.3d 141, 147; see, also, Evid.R. 611(B) and 614(A). Although a trial court has discretion in controlling the mode and order of the interrogation of witnesses and, indeed, may call witnesses and interrogate them in an impartial manner, a trial judge's questions must be relevant and void of a suggestion of bias for one side over another. Id.; see, also, Sandusky v. DeGidio (1988), 51 Ohio App.3d 202, 204, citing State v. Kay (1967), 12 Ohio App.2d 38. In a bench trial where the trial judge acts as the trier-of-fact, however, a reviewing court will presume that the trial court acted impartially and considered only properly admitted evidence.Columbus v. Guthmann (1963), 175 Ohio St. 282, paragraph three of the syllabus; see, also, State v. Post (1987),32 Ohio St.3d 380, 384, quoting State v. White (1968), 15 Ohio St.2d 146,151. As such, the trial judge in a bench trial has more freedom in questioning witnesses. See Klasa v. Rogers, Cuyahoga App. No. 83374, 2004-Ohio-4490, at ¶ 32, citing Lorenc v.Sciborowski (Mar. 16, 1995), Cuyahoga App. No. 66945, 1995 Ohio App. Lexis 951.
 {¶ 23} In this case, the trial court expressly stated that it would only consider the testimony about how the children were doing in their current placement; in particular, their adjustment to the foster home and their physical well-being. The trial judge specifically stated that she would not consider any comments made by the foster mother regarding what G.C. may or may not have seen regarding appellant's possession of a gun. Although the better practice would have been to allow the parties to cross-examine the foster mother, under the facts of this case and for the limited purpose for which the testimony was offered, we cannot say that the trial court abused its discretion
 {¶ 24} Appellant's second assignment of error is not well taken and is overruled.
 {¶ 25} Admission of Appellant's Past Criminal Charges
 {¶ 26} In her third assignment of error, appellant contends that the trial court erred when it admitted evidence of past criminal charges for which she was acquitted. Appellant argues that the evidence was prejudicial and should have been excluded.
 {¶ 27} It is well established that a trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice. Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271. As discussed in Section II, we presume that the trial judge, when acting as the trier-of-fact as in this case, considered only "relevant, material and competent evidence" in reaching its judgment unless there exists evidence to the contrary. Columbusv. Guthmann, 175 Ohio St. 282, at paragraph three of the syllabus. As it did with its treatment of the foster mother's testimony, the trial court specifically stated that it was limiting its consideration of this evidence. In particular, the court stated that it would consider evidence of appellant's past criminal charges solely for the purpose of determining whether the children had been neglected or dependent. The court stated:
 {¶ 28} "I certainly don't expect the court is going to be asked to retry the case where [appellant] was acquitted.
 {¶ 29} "I do believe, however, that the existence of that case is relevant to the extent that it does provide evidence of whether or not the children have been neglected or dependent. [Appellant's] ability or [inability] * * * to care for the children, that is relevant.
 {¶ 30} "As to the current [Lorain County] case, certainly I know the court is going to be asked to try that case.
 {¶ 31} "I do think her current case is relevant for purposes of assessing whether or not the children are neglected and dependent, whether more or less incarcerations have made her unable to care for the children or whether the home environment is unsafe.
 {¶ 32} "So I will allow some testimony about the fact that she has been incarcerated or is currently incarcerated."
 {¶ 33} We see no error. CCDCFS alleged in its amended complaint that appellant was unable to care for her children because of her frequent arrests and resulting incarcerations. Whether she was eventually acquitted of those charges, or that she now sits in prison awaiting trial on subsequent charges, goes to the fact that she was or is now absent from the children for whom she is responsible for providing care and shelter. If she is absent from the children for whatever reason, she cannot provide the care necessary to insure their well-being.
 {¶ 34} Appellant's third assignment of error is not well taken and is overruled.
 {¶ 35} Award of Permanent Custody
 {¶ 36} In her fourth assignment of error, appellant contends that the trial court's award of permanent custody to CCDCFS is not supported by the evidence.
 {¶ 37} A trial court's decision to award permanent custody will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Adoption of Lay (1986),25 Ohio St.3d 41, 42. Judgments supported by competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence.State v. Schiebel (1990), 55 Ohio St.3d 71, 74. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. Seasons Coal Co.v. Cleveland (1984), 10 Ohio St.3d 77, 80.
 {¶ 38} A complainant under R.C. 2151.27 must demonstrate by clear and convincing evidence that a child is abused, neglected or dependent. See R.C. 2151.35(A)(1). Once so adjudicated, a trial court may commit that child to the permanent custody of a public children services agency after determining that the child cannot be placed with either of the child's parents within a reasonable time in accordance with R.C. 2151.414(E) and that such a commitment is in the best interest of the child in accordance with R.C. 2151.414(D). See R.C. 2151.353(A)(4).
 {¶ 39} In determining whether a child cannot be placed with either parent within a reasonable period of time, the court shall consider all relevant evidence. It must then determine, by clear and convincing evidence, that one or more of the factors contained in R.C. 2151.414(E) exists and enter a corresponding finding that the child cannot be placed with either parent. Although, in its journal entry, the court found subdivision (E)(14) relevant, the evidence before the court also indicates that subdivision (E)(13) is similarly relevant. R.C.2151.414(E)(14) pertains to a parent's inability to provide food, clothing, shelter and other basic necessities for the child, while subdivision (E)(13) pertains to a parent's repeated incarcerations and the resulting inability to provide care for the child.
 {¶ 40} In determining the best interest of the child, R.C.2151.414(D) provides a nonexhaustive list of factors that the court must consider. These include (1) the child's interaction and interrelationship with, among others, the child's parents, siblings, relatives and foster caregivers; (2) the child's wishes expressed directly or through a guardian ad litem; (3) the child's custodial history; (4) the child's need for legally secure permanent placement and if that type of placement can be obtained without granting permanent custody to CCDCFS; and (5) whether any factors listed in R.C. 2151.414(E)(7) to (11) apply. See R.C. 2151.414(D)(1) through (5).
 {¶ 41} Appellant relies on the social worker's testimony to the effect that appellant made a "total turn-around" and an "amazing change" in her parenting skills, justifying CCDCFS's decision to request reunification in July 2002. It appears to be appellant's position that her repeated incarcerations are of no consequence because she has yet to be convicted of any the offenses for which she is charged.
 {¶ 42} It is true that appellant was acquitted of the charges contained in Cuyahoga County Common Pleas Case No. CR-427460. Nonetheless, several other cases remain pending, including the charges contained in Lorain County Common Pleas Case Nos. 03CR063563 03CR063765. She remains incarcerated on those charges and has been for more than a year. Before her present incarceration, she was incarcerated from August 2002 through March 2003. She was again arrested in July 2002 for a week and a half, posted bond, and was rearrested in August 2003 on the charges for which she is presently incarcerated. Appellant has been incarcerated for approximately 20 of the past 24 months. Moreover, she still faces trial on the outstanding Cuyahoga County indictments previously mentioned.
 {¶ 43} In awarding permanent custody to CCDCFS, the court stated:
 {¶ 44} "I want the record also to be clear that this court did not consider [appellant] as being guilty of any of the matters that she is currently facing trial on, but notes that those cases do raise serious questions about [appellant's] ability to provide a safe and nurturing home for the children, and the time that she has been incarcerated because of alleged criminal activity and has been away from the children.
 {¶ 45} "This certainly is a sad case because we have a very young mother and two very young children who need some stability in their life.
 {¶ 46} "And I was particularly persuaded by the testimony about [G.C.] being confused as to what to call who. No four year old should be confused as to who their mother, aunt or friend is. That is really not the natural way things ought to go, that I have a teacher, mommy, daddy, foster mom and a social worker; my goodness at four years old.
 {¶ 47} "So there is a need to have some permanency here, so permanent custody is granted. Emergency temporary custody is terminated."
 {¶ 48} It is apparent to us from this excerpt that the court considered not only the children's need for a legally secure permanent placement, but also the children's relationship with their caregivers, including appellant, and their custodial history, before finding that permanent custody was in the children's best interests.
 {¶ 49} The record reflects diligent efforts on the part of CCDCFS to avoid permanent custody. It is true that appellant, when not incarcerated, was able to demonstrate compliance with most of the recommendations made by CCDCFS, thereby justifying the agency's reunification efforts. Nonetheless, appellant's repeated incarcerations prevented her from being present with her children and providing the care they needed, thereby satisfying not only R.C. 2151.414(E)(13) but subdivision (E)(14) as well.
 {¶ 50} The record also reflects diligent efforts on CCDCFS's part in attempting to place the children with appellant's relatives. The evidence indicated that there was either disinterest on the part of some or lack of follow-through with CCDCFS on the part of others.
 {¶ 51} Because there existed competent, credible evidence supporting the court's decision to award permanent custody to CCDCFS, the court's decision was not against the manifest weight of the evidence.
 {¶ 52} Appellant's fourth assignment of error is not well taken and is overruled.
 {¶ 53} Failure to Continue Hearing
 {¶ 54} In her fifth assignment of error, appellant contends that the trial court abused its discretion when it denied her request to continue the hearing until her attendance could be secured.
 {¶ 55} "[T]he grant or denial of a continuance is a matter [that] is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion.'"State v. Jones (2001), 91 Ohio St.3d 335, 342, quoting Statev. Unger (1981), 67 Ohio St.2d 65, 67. The same is true of a court's decision to proceed with a permanent custody hearing without the presence of an incarcerated parent. State ex rel.Vanderlaan v. Pollex (1994), 96 Ohio App.3d 235, 236.
 {¶ 56} Although an incarcerated individual does not have an absolute right to be present in a civil case in which he or she is a party, that same individual has "a fundamental right to care for and have custody of his or her own children," a right that is not lost "simply because the parent has lost temporary custody of the child to the state." In re Sprague (1996),113 Ohio App.3d 274,276, citing Santosky v. Kramer (1982), 455 U.S. 745,753,102 S.Ct. 1388,1394,71 L.Ed.2d 599,606, andMancino v. Lakewood (1987), 36 Ohio App.3d 219, 211.
 {¶ 57} In determining whether parental due process rights in parental termination proceedings have been infringed, courts have employed the balancing test set forth in Mathews v. Eldridge
(1976), 424 U.S. 319, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33-34. See Sprague, 113 Ohio App.3d at 276. Courts are to consider (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of additional safeguards; and (3) the governmental burden of additional procedural safeguards. Id. Considering these factors, the Ninth District Court of Appeals concluded that an incarcerated parent's right to due process is not violated when (1) that parent is represented by counsel at the hearing; (2) a full record of the proceedings is made; and (3) any testimony that the parent may wish to present could be presented by way of deposition. In re Robert F. (Aug. 20, 1997), 9th App. No. 18100, 1997 Ohio App. Lexis 3746.
 {¶ 58} Here, appellant was represented by counsel at all stages of the proceedings, including the adjudicatory/dispositional hearing, and a full record was made. Although not requested, additional testimony could have been submitted by way of deposition. We acknowledge that an important fundamental right is involved. This right, however, needs to be balanced against the burden of additional procedural safeguards.
 {¶ 59} The court was aware that, at the time of the hearing, appellant was being held without bond in Lorain County on very serious charges. The risk of transport, assuming it would be possible under the circumstances, balanced against the fact that appellant was represented by counsel, militates against a finding that the trial court violated appellant's due process rights and abused its discretion when it denied her request for a continuance and conducted the adjudicatory/dispositional hearing in her absence.[6]
 {¶ 60} Appellant's fifth assignment of error is not well taken and is overruled. Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., concurs.
 Celebrezze, Jr., J., concurs in judgment only.
[1] Legal custody was awarded to appellant, with protective supervision by the agency, in July 2002. Actual physical possession, however, did not take place until August 12, 2002.
[2] Appellant was also indicted for robbery, two counts of felonious assault and drug possession/trafficking in Cuyahoga County Common Pleas Case Nos. CR-426251, CR-426121 and CR-443845, respectively. According to the social worker's testimony, these cases remain pending.
[3] G.C.'s father relinquished his parental rights during the course of these proceedings. M.C.'s father, though duly notified, did not participate in the adjudicatory/dispositional hearing in the trial court.
[4] Lorain County Common Pleas Case No. 03CR063563 charges appellant with (1) aggravated murder; (2) murder; (3) involuntary manslaughter; (4) aggravated robbery; (5) robbery; (6) conspiracy to commit aggravated robbery; (7) conspiracy to commit aggravated robbery; (8) tampering with evidence; and (9) two counts of felonious assault, all with firearm specifications. Lorain County Common Pleas Case No. 03CR063765 charges appellant with aggravated robbery, with a firearm specification.
[5] As pertains to Cuyahoga County Common Pleas Case No. CR-427460, the foster mother indicated to the court that G.C. may have witnessed appellant with a gun in her hand
[6] Indeed, appellant's counsel acknowledged that there existed "some security issues" and that appellant "did not anticipate being transported," whereupon appellant gave her counsel authority to proceed in her absence.