[Cite as *In re J.M.*, 2016-Ohio-7306.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104028**

# IN RE: J.M.
# A Minor Child

[Appeal by R.C., Father]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 12920167

**BEFORE:** Kilbane, J., Keough, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 13, 2016

**ATTORNEY FOR APPELLANT**

Judith M. Kowalski
333 Babbitt Road
Suite 323
Euclid, Ohio 44123


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Laura M. Brewster
Assistant County Prosecutor
Cuyahoga County Division of Children and Family Services
3955 Euclid Avenue
Cleveland, Ohio 44115


**GUARDIAN AD LITEM FOR J.M.**

Dale M. Hartman
2195 South Green Road
Cleveland, Ohio 44121


**GUARDIAN AD LITEM FOR B.F.**

Carla L. Golubovic
P.O. Box 29127
Parma, Ohio 44129

MARY EILEEN KILBANE, J.:

{¶1} Appellant, R.C. ("Father"), appeals from the juvenile court order awarding permanent custody of his daughter, J.M., to the Cuyahoga County Department of Children and Family Services ("CCDCFS") and denying his motions for legal custody.[1] For the reasons set forth below, we affirm.

{¶2} Father and B.F. ("Mother") are the parents of J.M. On December 4, 2012, while J.M. (who was then three years-old) and her step-brother G.F. III (who was then one year-old) were residing with Mother and her husband, G.F. II, G.F. II was arrested for felonious assault upon Mother. On December 5, 2012, CCDCFS filed a complaint, alleging that J.M. and G.F. III are neglected and requesting temporary and predispositional custody. That same day, the trial court awarded CCDCFS emergency preadjudicatory temporary custody of both children.

{¶3} The trial court appointed a guardian ad litem ("GAL") for J.M., and the dependency hearing was set for February 8, 2013. The hearing was later continued to March 6, 2013, in order to provide notice to Father. Father did not appear at the rescheduled hearing. Mother did appear and was represented by counsel. At the hearing, Mother admitted the following:

---

[1]Mother also appealed from the award of permanent custody of J.M. and G.F. III to CCDCFS in a separate appeal. *See In re J.M. & G.F., III,* 8th Dist. Cuyahoga No. 103040.

1. Mother and * * * G.F. II, have engaged in acts of domestic violence sometimes in the presence of the children, placing the children at risk of serious harm.

2. On or about December 1, 2012, Mother and G.F. II engaged in acts of domestic violence. The child, G.F. III, was in the home at the time of the domestic violence. Mother was approximately nineteen weeks pregnant during the event and taken by ambulance to a local emergency room after the incident. She returned to the hospital on or about December 3, 2012 in labor. The child died hours after delivery.

3. G.F. II is currently in jail subsequent to being charged with felonious assault due to the above described domestic violence incident. * * *

4. Mother minimizes the domestic violence and needs domestic violence counseling to provide safe and adequate care of the children.

5. Mother is diagnosed with bipolar disorder and needs to follow through with recommended services to provide safe and adequate care of her children.

6. Mother lacks suitable housing to care for the children.

7. Mother requires parenting classes and anger management services to provide safe and adequate care for the children.

8. Father G.F. II has an anger management problem that prevents him from providing safe and adequate care of his child.

9. Father G.F. II has a substance abuse problem that prevents him from providing safe and adequate care of his child.

10. Father of J.M., R.C., is currently awaiting trial for charges of domestic violence and felonious assault. * * *

11. Father of J.M., R.C., has established paternity but has failed to visit or communicate with the child on a consistent basis.

{¶4} The trial court subsequently concluded that J.M. is a neglected child, and that her return to the home is contrary to her best interest and welfare. Bimonthly review hearings were held from 2013 to 2014. In that time period, the GAL submitted reports outlining that J.M. had been molested by the maternal grandfather and identifying the ongoing issues stemming from that abuse. During most of this time period, according to the GAL, Father was "out of state for most of the case avoiding domestic violence warrants." The GAL also advised the court that, although J.M. is very articulate, she is "not of sufficient age [five years old] and/or maturity to express her wishes" in the matter.

{¶5} On May 28, 2014, CCDCFS moved for permanent custody of J.M. under R.C. 2151.414(B)(1)(d). CCDCFS alleged that Mother had made insufficient progress on her case plan goals, and Father "never presented himself to CCDCFS" in order to complete an assessment as to his need for reunification-related services.

{¶6} On September 8, 2014, Father appeared in the matter for the first time, and counsel was appointed for him. On February 2, 2015, Father filed a motion for legal custody of J.M. On April 13, 2015, after meeting with Father and observing his interaction with J.M., the GAL prepared a followup report. The GAL noted that he met with and observed J.M. with Father, Father's fiancée, K.Z. ("K.Z."), and their children. The GAL reiterated that J.M. continued to lack sufficient maturity to express her wishes regarding custody. The GAL also highlighted ongoing concerns for J.M. that, if not remedied, should cause the court to terminate parental rights. The GAL wrote:

J.M.'s father wants legal custody. He does not work and is dependent on [K.Z.] who happens to be a very close friend of [Mother]. [K.Z.] supports [Father] and her own children, takes care of the home, and also takes a very active role in the visits. Although [K.Z.] seems suitable, the undersigned does not believe [Father] could independently take care of the children. Moreover, since [Mother] and [K.Z.] are very close, a heretofore unanswered question remains as to whether legal custody would not be a sham to allow [Mother], who has not done her case plan and has not shown an ability to care for or protect her children, [to] care for the children.

{¶7} On April 21, 2015, Father filed an amended motion for legal custody in which he asked the court to award him legal custody of both J.M. and G.F. III. In a second amended motion for legal custody, Father alternatively asked the trial court to award custody of both children to K.Z. Mother advised the court that she supported Father's second amended motion for legal custody.

{¶8} A dispositional hearing was held on July 30, 2015. CCDCFS Social Worker Michelle Legat ("Social Worker Legat") testified that J.M., who was five and one-half years old by the time of the hearing, has been the victim of molestation and is currently in counseling. She has nightmares, engages in "sexualized behaviors," has symptoms of ADHD, and is extremely aggressive. No other family members are able to take custody of J.M., and she and G.F. III have both been in the foster care of A.C. ("A.C." or "the foster mother") since 2012. J.M. refers to A.C., who is 70 years old, as "granny," and they are very bonded. The home is very structured, which has helped calm J.M. Additionally, the foster mother installed an alarm in the bathroom of the home in order to help ensure that J.M. does not engage in inappropriate behavior with G.F. III.

{¶9}   Social Worker Legat further testified that G.F. II has not met with CCDCFS officials to work on his case plan, and that he is wanted by the police.   Mother is still married to G.F. II, but she resides with another individual and is expecting his child. Mother has worked on her case plan and completed domestic violence and parenting classes.   Two months before the hearing, Mother began mental health counseling and obtained employment.   She moved into her boyfriend's apartment, which is infested with cockroaches.   Her  boyfriend is currently incarcerated.   Mother completed an anger management class, but she recently got into a physical altercation regarding a gaming system.   Visits with the children were "playtime" and unstructured.   Social Worker Legat opined that Mother has made "moderate" progress on her case plan but did not benefit from the services she obtained, and is unable to provide for the basic needs of her children or to care for them appropriately.

{¶10} Social Worker Legat further testified that Father did not see J.M. from the time she was two years old until she turned five years old.   He stated that he avoided visiting J.M. because of his dislike for G.F. II.   Once contact was reestablished, Father missed a few scheduled visits because it was too far for him to travel.   After the location was changed, Father's attendance improved, but Social Worker Legat testified that he is always an hour late and spends more time talking to her than interacting with J.M.   K.Z., who has one child with Father and four other children, initially accompanied Father during the visits, but she later stopped visiting J.M.   When K.Z. was present at the visits, she took over playing with and caring for the children, and Father "went in the

background." Within the preceding six weeks before trial, K.Z. stopped visiting J.M., and J.M. has not asked about K.Z.'s absences.

{¶11} Social Worker Legat further testified that Father has not paid support for J.M., and he has ten children in addition to J.M. He also has a "significant domestic violence and felonious assault history and civil case history," including a domestic violence conviction stemming from an attack on one of his other children. That child is now the subject of delinquency proceedings. Father currently resides with K.Z., their child, and K.Z.'s four other children. Father informed Social Worker Legat that he had worked as a mechanic, but because of issues with his mechanic's license, he is now working as a part-time delivery person with K.Z.'s family's business. He did not provide Social Worker Legat with any pay stubs or other documentation. K.Z. likewise had no documented income and stated that she was paid "under the table." Father also informed Social Worker Legat that his child support payments are not current and an attachment order in the amount of $14,533 was issued against him in 2012. He stated that he only pays child support when ordered to do so by the court, and he has been found in contempt of court for nonpayment.

{¶12} Social Worker Legat further testified that the home Father shares with K.Z. is clean and there is sufficient food, but J.M. would not be able to have her own bedroom, which would be best for her in light of her abuse-related issues. Two of K.Z.'s other children have a "mental health diagnosis." Social Worker Legat opined that Father is not able to prove the basic needs for any of his children, including J.M. Social Worker

Legat testified that J.M. and G.F. III "both stated that they wanted to stay with [the foster mother]." J.M. had previously stated that she would like to go home with Mother, and she "is afraid to go home to [Father's] because he doesn't have enough space for her." Finally, Social Worker Legat stated that both Mother and Father are likeable people who love J.M. very much, but neither parent can provide the home and stability that she deserves, and therefore, the best interest of J.M. would be served by awarding permanent custody to CCDCFS.

{¶13} Ohio Guidestone Therapist Jamie Saunt ("Therapist Saunt") testified that J.M. received therapy for aggression-related issues from 2011 to 2012. The case was closed at the request of Mother, but was then reopened in 2013, after J.M. began to engage in sexual acting out and aggression that is often targeted at G.F. III. Therapist Saunt engages in art therapy and play therapy with the children to teach them appropriate behavior and to help the parents with parenting issues. She has met with the children in the foster home and at Mother's home. Although Mother had been making progress toward reunification, by March 2014, Mother's participation in therapy had become more sporadic. Therapist Saunt determined that it would be best to continue the therapy at the home of the foster mother.

{¶14} Therapist Saunt further testified that an integral part of the treatment plan involves educating the caregivers, helping them to parent and model appropriate behavior, and helping them improve their relationships with the children. Therapist Saunt is in regular communication with the foster mother who has a very strong

relationship with the children. Her home is structured, safe, and nurturing. J.M. and G.F. III have separate bedrooms. The children have thrived with her and are meeting their therapeutic goals. They have made tremendous progress "mostly due to the environment of [the foster mother's] home."

{¶15} Therapist Saunt further testified that she met with Mother eight times and twice with Father. During Father's first visit, K.Z. and Father arrived with "a lot of other children so [Saunt] wasn't really able to do any therapy" with them. Father indicated that he could manage J.M.'s behavior, but both he and K.Z. were much more engaged with the other children. During the second visit, Father arrived 15 minutes before the end of the visit.

{¶16} Father testified on his own behalf and stated that he has eleven children, five of whom are emancipated. He admitted that he did not see J.M. from the time that J.M "went into the system," i.e., December 2012 until G.F. II was imprisoned. Father blamed the absence on G.F.II.'s conduct. Father further testified that he and K.Z. reside with their three-year-old son and K.Z.'s four other children from a prior relationship, including a seventh grader, fourth grader, third grader, and first grader. One of K.Z.'s children has Tourette Syndrome. K.Z. works at a delivery service that her family manages, and for the past six weeks, Father has also worked there approximately 16 hours per week. He is paid "under the table." He admitted that he had not paid any support for J.M. for at least a year. He is subject to child support orders for several of his children, but he is not current in his payments and has been found in contempt of court.

Father admitted that he had been imprisoned for a total of eight and one-half years. During that time, he obtained his GED, completed auto mechanic courses, domestic violence treatment, and parenting classes. K.Z. is extremely supportive and helps him with the children, and she also helps him work on his case plan goals.

{¶17} Father stated that he is capable of taking care of the well-being and safety of the children despite J.M.'s issues of sexually acting out and aggression. He stated that he has stopped working on another of his children's delinquency issues so that he can focus on J.M. He admitted, however, that he does not know what triggers J.M.'s aggression and is not familiar with her individualized education plan. He also admitted that she would not have her own bedroom at his home.

{¶18} K.Z. testified that her children are doing very well in school, but her oldest son is in counseling for emotional and expressive disabilities. K.Z. is planning on returning to school to complete her medical assistant degree. She acknowledged that she was convicted of misdemeanor assault in 2006 following a confrontation with her ex-husband.

{¶19} K.Z. testified that Father is upbeat, charismatic, and patient with the children. He takes good care of them, plays with them, and helps them with their homework. He also does housework and makes dinner. K.Z. admitted, however, that she has not visited with J.M. or G.F. III during the six weeks before trial. She was not familiar with their diagnoses and did not know where they received services. She has not engaged in "specialized techniques" to help with the children's therapies.

**{¶20}** The GAL testified that he observed Father during supervised visitations at CCDCFS. During those visits, "there were a whole bunch of kids there." Father and Mother were taking the lead in terms of taking care of the children, but the visitation mostly involved children playing.

**{¶21}** On December 16, 2015, the trial court terminated the parental rights of Mother and Father and awarded permanent custody of J.M. to CCDCFS.

**{¶22}** Father now appeals and assigns five errors for our review. For the sake of clarity, we will address the assignments of error out of their predesignated order and group them together where it is appropriate to do so.

### Assignment of Error One

The Juvenile Court abused its discretion when it denied Father's motion for legal custody of the children to [K.Z.], as said disposition would have vitiated the need for parental rights termination and served the children's best interests.

### Assignment of Error Two

The juvenile court abused its discretion in determining that clear and convincing evidence supported its decision to award permanent custody to [CCDCFS].

### Assignment of Error Three

The decision to award permanent custody [of J.M. to CCDCFS] was against the manifest weight of the evidence.

### Assignment of Error Four

The trial court abused its discretion in finding the award of permanent custody was in the best interest of the child.

### Assignment of Error Five

The juvenile court erred to the prejudice of [Father] and did not act in furtherance of the best interests of [J.M.], by failing to appoint an [independent attorney to represent J.M.'s] legal interest.

<u>Failure to Appoint Independent Counsel</u>

**{¶23}** In his fifth assignment of error, Father complains that the trial court erred in failing to appoint counsel for J.M. because her wishes conflicted with the recommendation of the GAL.

**{¶24}** In general, when an attorney is appointed as GAL for a child, that attorney may also act as counsel for the child, absent a conflict of interest. *In re Janie M.*, 131 Ohio App.3d 637, 639, 723 N.E.2d 191 (6th Dist.1999), citing R.C. 2151.281(H) and *In re Smith*, 77 Ohio App.3d 1, 14, 601 N.E.2d 45 (6th Dist. 1991); R.C. 2151.281(H).

**{¶25}** Under Sup.R. 48(D):

(7)     When a court appoints an attorney to serve as both the [GAL]   and attorney for a child, the attorney shall advocate for the child's best interest and the child's wishes in accord with the Rules of Professional Conduct.   Attorneys who are to serve as both [GAL] and attorney should be aware of Rule 3.7 of the Rules of Professional Conduct and act accordingly.

(8)     When a [GAL] determines that a conflict exists between the child's best interest and the child's wishes, the [GAL] shall, at the earliest practical time, request in writing that the court promptly resolve the conflict by entering appropriate orders.

**{¶26}** Further,   Ohio Rules of Juvenile Procedure 4(C)(2) provides:

If a person is serving as [GAL] and as attorney for a ward and either that person or the court finds a conflict between the responsibilities of the role of attorney and that of [GAL], the court shall appoint another person as [GAL] for the ward.

{¶27} In *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 17, the Ohio Supreme Court held that courts should determine, on a case-by-case basis, whether the child actually needs independent counsel, "taking into account the maturity of the child and the possibility of the [GAL] being appointed to represent the child." Ohio courts have concluded that "the appointment of independent counsel is warranted when a child has 'repeatedly expressed a desire' to remain or be reunited with a parent but the child's [GAL] believes it is in the child's best interest that permanent custody of the child be granted to the state." *In re Hilyard*, 4th Dist. Vinton Nos. 05CA600 through 05CA609, 2006-Ohio-1965, ¶ 36 (footnotes omitted); *In re N.P. & E.M.*, 11th Dist. Lake Nos. 2015-L-061 and 2015-L-062, 2015-Ohio-4542, ¶ 18; *In re M.H.*, 12th Dist. Fayette No. CA2012-11-035, 2013-Ohio-1063, ¶ 34; *In re B.W.*, 9th Dist. Medina No. 12CA0016-M, 2012-Ohio-3416, ¶ 42. However, where the child lacks the maturity to make a decision of this importance, the court has the discretion to refrain from appointing independent counsel. *In re M.W.*, 8th Dist. Cuyahoga No. 83390, 2005-Ohio-1302, ¶ 15. *Accord In re K. & K.H.*, 8th Dist. Cuyahoga No. 83410, 2004-Ohio-4629, ¶ 9 ("the level of cognitive maturity exhibited by a four-year-old non-developmentally delayed child is not that which would indicate the need for independent legal counsel."); *In re G.C. & M.C.*, 8th Dist. Cuyahoga No. 83994, 2004-Ohio-5607 (same holding as *In re K. & K.H.*) *Accord* R.C. 2151.414(D)(1)(b) (trial court shall consider the child's wishes "as expressed directly by the child or through the child's [GAL], with due regard for the maturity of the

child.")

{¶28} In this matter, J.M. was five and one-half years old at the time of trial. Social Worker Legat testified that J.M. has indicated that she would like to go home with Mother, B.F. J.M. "is afraid to go home to [Father] because he doesn't have enough space for her" and both J.M. and G.F. III "both stated that they wanted to stay with [the foster mother]." There is no clear indication in the record that the children want to stay with Father, and in light of his criminal record, the trial court could conclude that J.M. is prohibited from being placed with him under R.C. 2151.414(E)(6) and (7). Further, there is no indication in the record that J.M. wants to live with K.Z. Moreover, the GAL repeatedly advised the court that J.M. was extremely immature. Therefore, the court acted within the sound exercise of its discretion and properly determined that J.M. did not need independent counsel in this matter.

{¶29} The Father's fifth assignment of error is overruled.

### Legal Custody to K.Z.

{¶30} In his first assignment of error, Father argues that the trial court erred in refusing to grant his motion for legal custody of J.M. and the alternative motion for legal custody to be awarded to K.Z. He argues that the award of legal custody to him or to K.Z. is a legally secure placement that is both in J.M.'s best interest and "less drastic" than the termination of parental rights.

{¶31} In considering a permanent custody motion, the trial court has discretion to award legal custody to either parent or to any other person who files a motion

requesting legal custody pursuant to R.C. 2151.353(A)(3). However, R.C. 2151.414(D) does not make the availability of a placement that would not require a termination of parenting rights an all-controlling factor, and does not even require the court to weigh that factor more heavily than other factors. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 63. Further, a juvenile court need not determine by clear and convincing evidence that "termination of appellant's parental rights was not only a necessary option, but also the only option." *Id.* at ¶ 64. Rather, the statute "requires the court to find the best option for the children." *Id.*

{¶32} In considering a disposition of legal custody, there is no specific test or set of criteria that must be followed in determining what is in a child's best interest in a legal custody case. *In re D.T.*, 8th Dist. Cuyahoga Nos. 100970 and 100971, 2014-Ohio-4818, ¶ 20. The R.C. 2151.414(D) factors are instructive. *Id.* These factors include: the interaction of the child with the child's parents, relatives, and caregivers; the wishes of the child, as expressed directly by the child or through the child's GAL; the custodial history of the child; and the child's need for a legally secure permanent placement. R.C. 2151.414(D). The trial court's decision to grant or deny a motion for legal custody is within the broad discretion of the trial court. *In re D.T.* at ¶ 22.

{¶33} As to an award of legal custody to Father, the record establishes that he has a prior record that includes a conviction for domestic violence upon one of his other ten children. He obtained employment only six weeks prior to trial and is not current in his child support obligations. The GAL opined that Father could not independently take

care of the children. The court concluded that legal custody to Father would require J.M. to share a room, which is not advised because of her abuse-related acting out. In accordance with the foregoing, we cannot conclude that the trial court abused its discretion in denying Father's motion for legal custody.

{¶34} As to an award of legal custody to K.Z., the GAL concluded that K.Z. supports Father and her own children, takes care of the home, takes a very active role in the visits, and "seems suitable." However, the GAL questioned whether legal custody to K.Z. would be a "sham to allow [Mother]" to take care of the children. At trial, K.Z. admitted that she had not visited the children in the past six weeks and she knew very little of their diagnoses or their treatment. In addition, the court stated:

> [K.Z.] was investigated * * * and the agency was not convinced that it would be in the children's best interest for [K.Z.] to be given legal custody. She already has four biological children for which she struggles to provide adequate shelter, food and clothing. She has a prior criminal conviction for assault. Her initial visits with the children were consistent and frequent, however, they diminished in both areas for a significant period.
>
> * * *
>
> [K.Z.] is not a relative of either child. Her initial visits with the children were consistent, but the later irregularity has failed to create the bond that should be present. Additionally, she is residing with [Father] so the same challenges would exist regarding housing. Moreover, she, like [Father], has a prior criminal conviction for a violent offense.

{¶35} In accordance with the foregoing, we cannot conclude that the trial court abused its discretion in denying Father's alternative motion for legal custody to be awarded to K.Z.

{¶36} The first assignment of error is without merit.

Permanent Custody

**{¶37}** In his remaining assignments of error, Father asserts that the trial court erred in awarding permanent custody of J.M. to CCDCFS. Father argues that he can provide a suitable home for J.M., J.M. did not want parental rights to terminate, and the foster mother is 70 years old and not committed to adopting J.M.

**{¶38}** "An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314, ¶ 48; *In re M.J.*, 8th Dist. Cuyahoga No. 100071, 2013-Ohio-5440, ¶ 24. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). A reviewing court is required to examine the record to determine whether the trier of fact had sufficient evidence to satisfy the clear and convincing standard. *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 24. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence." *In re S.D.*, 8th Dist. Cuyahoga Nos. 99410, 99411, and 99412, 2013-Ohio-3535, ¶ 13, citing *In re B.M.*, 8th Dist. Cuyahoga No. 96214, 2011-Ohio-5176, ¶ 32.

**{¶39}** R.C. 2151.414(B) authorizes a court to grant permanent custody of a child to

an agency if, after a hearing, the court determines, by clear and convincing evidence that:

(1) the existence of any one of the conditions set forth in R.C. 2151.414(B)(1)(a) through

(d); and (2) that granting permanent custody to the agency is in the best interest of the

child.    R.C. 2151.414.

{¶40} As to the first factor, CCDCFS asserted that the award of permanent custody

was authorized under R.C. 2151.414(B)(1)(d), which states:

> The child has been in the temporary custody of one or more public children
> services agencies or private child placing agencies for twelve or more
> months of a consecutive twenty-two-month period, or the child has been in
> the temporary custody of one or more public children services agencies or
> private child placing agencies for twelve or more months of a consecutive
> twenty-two-month period and, as described in division (D)(1) of section
> 2151.413 of the Revised Code, the child was previously in the temporary
> custody of an equivalent agency in another state.

{¶41} As to the second factor,    R.C. 2151.414(D)(1) directs that the trial court

"shall consider all relevant factors," including, but not limited to, the following:

> (a)    The interaction and interrelationship of the child with the child's
> parents, siblings, relatives, foster caregivers and out-of-home
> providers, and any other person who may significantly affect the
> child;
>
> (b)    The wishes of the child, as expressed directly by the child or through
> the child's [GAL], with due regard for the maturity of the child;
>
> (c)    The custodial history of the child, including whether the child has
> been in the temporary custody of one or more public children
> services agencies or private child placing agencies for twelve or
> more months of a consecutive twenty-two-month period, or the child
> has been in the temporary custody of one or more public children
> services agencies or private child placing agencies for twelve or
> more months of a consecutive twenty-two-month period and, as
> described in division (D)(1) of section 2151.413 of the Revised
> Code, the child was previously in the temporary custody of an

equivalent agency in another state;

(d)     The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)     Whether any of the factors in divisions (E)(7) to (11) of this section

apply in relation to the parents and child.

**{¶42}** In conducting a best interest analysis under R.C. 2151.414(D), "[t]he court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56.

**{¶43}** In this matter, the evidence demonstrates that J.M. was placed in the emergency custody of CCDCFS in December 2012, and CCDCFS was then granted preadjudicatory custody in March 2013. J.M. has therefore been in the custody of CCDCFS for 12 or more months of a consecutive 22-month period. The evidence also demonstrates that reasonable efforts were made to reunify J.M. with her parents through various programs and specific goals as set forth in the case plan. Mother engaged in numerous services and programs but, unfortunately, was not able to benefit from them. Father, who has a criminal record that includes a conviction for domestic violence upon one of his other ten children, has a considerable child support arrearage and admits that he only pays child support when ordered to do so by the court. He had no contact with J.M. for a significant portion of her young life. Social Worker Legat stated that Father did not see J.M. from the time she was two years old until several months before trial.

Similarly, the GAL also advised the court that Father had no contact with the child for approximately two years. Father admitted that he did not maintain contact with J.M. after the CCDCFS obtained custody of her, but he claimed that this was caused by the conduct of G.F. II., and he resumed contact after G.F. II was imprisoned. Father admitted that he did not pay support for the child, and he obtained employment only six weeks before trial. The court noted that Father failed to provide sufficient proof of his employment with K.Z.'s family's business. During the supervised visits, Father frequently arrived late and spent considerable time speaking with Social Worker Legat. He and K.Z. reside in a home with their child and K.Z.'s other four children. There is not adequate space for J.M. to have her own room, which is recommended to meet J.M.'s specialized needs. K.Z. was unaware of J.M.'s diagnoses and treatment requirements and stopped visiting with J.M. in the six weeks prior to trial. On the other hand, J.M. is thriving in foster care and she has expressed the desire to remain with her foster mother. As stated by the trial court:

> Father has committed an act of domestic violence against one of J.M.'s siblings, has not provided sufficient proof of his employment status and [he is] residing in a home that does not have adequate space to meet the specialized needs of J.M.

**{¶44}** Upon careful consideration of the record, we conclude that there is competent, credible, clear and convincing evidence to support the trial court's termination of parental rights and award of permanent custody to CCDCFS. The trial court made the

appropriate considerations in this case and found by clear and convincing evidence that, although reasonable efforts were made toward reunification, J.M. cannot and should not be placed with either of her parents, the reunification of J.M. and Father is not in the child's best interest, and that it is in the child's best interest to be placed in the permanent custody of CCDCFS. Moreover, in light of the clear and convincing evidence that established that J.M. had been in the continuous custody of CCDCFS since December 2012, and that termination of parental rights and the award of permanent custody to CCDCFS is in her best interest, the trial court's decision is not against the manifest weight of the evidence.

{¶45} Father's second, third and fourth assignments of error are overruled.

{¶46} Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
TIM McCORMACK, J., CONCUR